THE NATIONAL SHAWMUT BANK OF BOSTON vs. ELLIOTT C. W. JOHNSON.

Plymouth.   November 9, 1944. — January 4, 1945.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Deceit. Assignment. Bills and Notes, Indorsement. Bankruptcy, Discharge. Damages, For tort. Value.*

A "loan receipt," which was given to the insurer by one insured against loss through forgery, which acknowledged receipt of a certain sum of money "as a loan and repayable only to the extent of any net recovery" that the insured might "make from any person or persons" on account of loss sustained through forgery on a certain document, and which contained a pledge of the recovery to the insurer as security for the payment of the loan and the insured's agreement to commence and prosecute, at the expense and under the control of the insurer, an action against "such person or persons" "on account of said claim for said loss," was not invalid as an attempted assignment of a right to litigate a fraud and did not preclude such an action against the perpetrator of the forgery although the amount acknowledged therein to have been received by the insured was the amount which he received when he made a claim under the policy.

An indorsee and holder in due course of a promissory note, who had received it in reliance upon the genuineness of the signatures of the makers, was entitled to maintain an action of tort for deceit against one of its makers, who had forged the signature of his comaker and had delivered the note to the payee for a loan: the forger's representation of the genuineness of his comaker's signature was a continuing representation which went with the note and was intended by the forger to be so regarded by those who would thereby be induced to purchase the note.

A discharge in bankruptcy under U. S. C. (1940 ed.) Title 11, § 35 (a) (2), does not discharge a claim for money obtained by the bankrupt by deceit perpetrated through forgery if such deceit, even though not the sole or predominant factor inducing the claimant to part with his money, was a material factor.

A finding that a note secured by a real estate mortgage had only a nominal value in the hands of a holder was not warranted by evidence merely that the signature of one of three makers of the note, wife of the owner of the mortgaged real estate, had been forged on the note and the mortgage, without evidence of the financial worth of the other makers or of the value of the real estate.

A finding for a holder in due course of a note for its "full amount" in an action of tort for deceit against one of the makers who had represented that the signature of a comaker was genuine whereas he had forged it was error where the evidence did not warrant a finding that the real value of the note was nominal only.

TORT. Writ in the Second District Court of Plymouth dated October 29, 1941.

The case was heard by *Shea,* J.

The "loan receipt" read as follows:

## LOAN RECEIPT

Received from Underwriters who executed Lloyd's Form J (A) Policy No. D-30941, the sum of Eighteen Thousand Three Hundred Eighty-eight and 00/100 ($18,388.00) Dollars as a loan and repayable only to the extent of any net recovery we may make from any person or persons, corporation or corporations, on account of loss sustained through or as a result of the forgery of the name of Anna N. Johnson upon a mortgage note in the sum of $7,900.00, dated May 5th, 1930, payable to the United States Bond & Mortgage Corporation of Massachusetts, or Order, at the rate of $100.00 per month, from May 1st, 1930, with interest thereon at the rate of 6%, except in the event of default when interest accrued at 10%, and the forgery of the name of Anna N. Johnson upon a mortgage note in the sum of $11,788.00, dated October 22nd, 1931, payable to the order of the United States Bond & Mortgage Corporation of Massachusetts, or Order, at the rate of $100.00 per month from January 2nd, 1932, with interest thereon at the rate of 6%, except in the event of default when interest accrued at 10%, or from any insurance effected by such person or persons, corporation or corporations.

As security for such repayment, we hereby pledge to said Underwriters who executed Lloyd's Form J (A) Policy No. D. 30941, the said recovery and deliver to them all documents necessary to show our interest in said property and we agree to enter and prosecute suit against such person or persons, corporation or corporations on account of said claim for said loss, with all due diligence, at the expense and under the exclusive direction and control of said Underwriters who executed Lloyd's Form J (A) Policy No. D. 30941.

THE NATIONAL SHAWMUT BANK OF BOSTON
By W. E. Borden, Vice Pres.

*H. H. Heller*, for the defendant.

*H. Sesnovich*, for the plaintiff, submitted a brief.

RONAN, J.   This is an action of tort for deceit brought by the holder of two notes, payable to the United States Bond & Mortgage Corporation of Massachusetts, hereafter called the corporation, one in the principal sum of $7,900 and the other for $11,788, and made by the defendant and Sarah A. Johnson, his mother.   Both notes also purported to bear the signature of the defendant's wife, Anna N. Johnson, as the third comaker, but her signature was forged by the defendant.   Both notes were secured by mortgages on real estate, and the signature of Anna N. Johnson on these mortgages was also forged by the defendant.   There was evidence that the notes were given for loans made by the corporation to the defendant; that at the times the loans were made and the notes taken, the corporation knew that the defendant was the owner of the premises included in the mortgages; that it relied upon the genuineness of the signatures on all the instruments; and that it would not have accepted the notes if it had known that the signatures of the defendant's wife had been forged.   It also appeared from the evidence that the plaintiff was the holder in due course of both notes,[1] and that it has been paid by an insurance company $18,388 for the loss sustained on account of taking the forged notes.   The defendant filed a petition in bankruptcy in 1935 in which he scheduled these notes.   He received a discharge in bankruptcy in 1936.   The vice-president of the plaintiff testified that it had placed a value of $24,000 upon the notes when they were received by it and that the defendant or his mother had made some payments on the notes.   The judge found for the plaintiff in the sum of $24,500, and the defendant's appeal from an order of the Appellate Division dismissing the report brings the case here.

The first contention of the defendant is that the loan receipt given by the plaintiff to the insurance company is

---

[1] There was evidence that the plaintiff took the notes and mortgages as collateral security for an existing indebtedness of the corporation to it. — REPORTER.

an assignment of this cause of action to the company, and that there was error in granting three requests of the plaintiff and denying twelve requests of the defendant touching this branch of the case. The plaintiff carried a policy of forgery insurance, and after the discovery of the forgeries it made claim under the policy and was paid $18,388 by the insurance company. It gave the company a loan receipt acknowledging the receipt of the money "as a loan and repayable only to the extent of any net recovery" that the plaintiff might obtain on account of the loss that it had sustained by the forgeries, and. as security for the payment of the loan the plaintiff pledged the recovery to the company and agreed to commence and prosecute, at the expense and under the control of the company, an action against the one liable for the forgeries. . It is doubtless the law of this Commonwealth that a right to litigate a fraud perpetrated upon a person is not assignable at law or in equity, and that the prosecution by the alleged assignee of an action or suit on account of the fraud would be contrary to public policy. *United Zinc Co.* v. *Harwood,* 216 Mass. 474. *American Woolen Co.* v. *Old Colony Trust Co.* 263 Mass. 321. *Baker* v. *Allen,* 292 Mass. 169. The loan receipt, a copy of which is included in the record, shows clearly the nature of the arrangements between the plaintiff and the company. There is nothing inconsistent with it in the testimony of the plaintiff's vice-president that the plaintiff was paid $18,388 by the insurance company. It is undisputed that the sum was paid in accordance with the provisions of the loan receipt. It has been decided that such a receipt does not . constitute an assignment of the claim, and we see no reason not to follow such decisions here. *Luckenbach* v. *W. J. McCahan Sugar Refining Co.* 248 U. S. 139. *First National Bank of Ottawa* v. *Lloyd's of London,* 116 Fed. (2d) 221.

Furthermore, if the defendant's requests on this branch of the case, many of which are framed in broad terms and in some instances are mere abstractions of law, can be understood to raise any question apart from the nature and effect of the loan receipt, then we perceive no error in the denial

of them.  The judge has warrantably found that the corporation relied upon the genuineness of the signatures of the comakers of the notes and paid the money to the defendant as the result of his false representation that the signatures were genuine.  It is also clearly implied from the judge's other findings that the taking of the notes by the plaintiff in good faith for value before maturity and without notice of the forgery was the natural and probable consequence of the defendant's fraud.  The representation that the signatures were genuine was a continuing representation which went with the notes and was intended to be so regarded by those who would thereby be induced to purchase the notes in the belief that the signatures were what they appeared to be.  In *Peoples National Bank* v. *Dixwell,* 217 Mass. 436, an indorsee was held entitled to recover in tort for deceit and allowed to recover against those who without authority had made a note in the name of a corporation by signing as president and treasurer respectively, where the plaintiff purchased the note in reliance upon such assertion of authority by the defendants and the corporation refused to pay it.  It was said at pages 437–438, in answer to a contention of the defendants that only the payee could recover for deceit, "But the representations are made in the document itself, which upon its face is negotiable in form.  It is to be assumed that the defendants contemplated that it might pass into the hands of parties taking the same in reliance upon the statements therein contained, and that the defendants intended that in such a case the statements should stand as made to any rightful holder;  or in other words that the statements are to be regarded as continuous."  See also *Nash* v. *Minnesota Title Ins. & Trust Co.* 159 Mass. 437;  *Roberts* v. *Anheuser Busch Brewing Association,* 211 Mass. 449, 451;  *Rome* v. *Gaunt,* 246 Mass. 82;  *United States Gypsum Co.* v. *Carney,* 293 Mass. 581, 587;  *Johnson-Foster Co.* v. *D'Amore Construction Co.* 314 Mass. 416, 420.

The next contention of the defendant is that his discharge in bankruptcy bars recovery on the ground that there was no evidence that the corporation in parting with its money was induced to do so solely by reliance upon the signatures

upon the notes and mortgages being genuine, and that therefore the money was not obtained by the defendant entirely "by false pretences or false representations." The bankruptcy act, § 17a (2), U. S. C. (1940 ed.) Title 11, § 35 (a) (2), provides: "A discharge in bankruptcy shall release a bankrupt from all his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations." It is the settled law of this Commonwealth in actions for deceit and in prosecutions for obtaining money under false pretenses through false and fraudulent representations that the representations need not be the sole or predominating motive that induced the victim to part with his money or property, but that it is enough if they alone or with other causes materially influenced him to take the particular action that the wrongdoer intended he should take as a result of such representations and that otherwise he would not have taken such action. *Commonwealth* v. *Drew*, 19 Pick. 179, 183. *Matthews* v. *Bliss*, 22 Pick. 48, 53. *Safford* v. *Grout*, 120 Mass. 20, 25. *Commonwealth* v. *Lee*, 149 Mass. 179. *Windram* v. *French*, 151 Mass. 547. *Burns* v. *Dockray*, 156 Mass. 135, 138. *Light* v. *Jacobs*, 183 Mass. 206, 210. *Commonwealth* v. *Farmer*, 218 Mass. 507. *Duncan* v. *Doyle*, 243 Mass. 177. *Commonwealth* v. *Jacobson*, 260 Mass. 311. *Baskes* v. *Cushing*, 270 Mass. 230, 233. *McGrath* v. *C. T. Sherer Co.* 291 Mass. 35, 58. The defendant was warrantably found responsible for obtaining money by a false representation, and that liability is unaffected by his discharge in bankruptcy. There was no error in the manner in which the judge treated the requests with reference to the defendant's discharge in bankruptcy. *Morse* v. *Hutchins*, 102 Mass. 439. *Turner* v. *Atwood*, 124 Mass. 411. *Merchants' Ins. Co.* v. *Abbott*, 131 Mass. 397. *Lee* v. *Tarplin*, 194 Mass. 47. *Bullis* v. *O'Beirne*, 195 U. S. 606. *Friend* v. *Talcott*, 228 U. S. 27. *Personal Finance Co.* v. *Martinez*, 115 Fed. (2d) 226. *Morris Plan Industrial Bank* v. *Lassman*, 116 Fed. (2d) 473. *Beem* v. *Farrell*, 135 Iowa, 670. *Wheeler* v. *Traders Deposit Bank*, 107 Ky. 653. *Van Slyke* v. *Rooks*, 181 Mich. 88. *Public*

*Bank* v. *Burchard,* 135 Minn. 171.    *Second National Bank*
v. *Hewitt,* 30 Vroom, 57.    *Morris Plan Co.* v. *Adler,* 126
Misc. (N. Y.) 237.    *Davis* v. *Rothenberg,* 124 Okla. 74.
*Fretwell* v. *Carter,* 78 S. C. 531.

The final contention of the defendant is that the judge
adopted an erroneous rule of damages.    The judge granted
the plaintiff's twelfth request that, if the finding were for
the plaintiff, "then the measure of damages is the full
amount of the notes in question," and the fifteenth request
that the value of the notes when delivered by the de-
fendant was nominal.    The twelfth request purports to
be based on *Sibley* v. *Hulbert,* 15 Gray, 509.    The judge
also granted the thirteenth and fourteenth requests to the
effect that the measure of damages was the difference
between the actual value of the notes when delivered to
the corporation and what their value would have been if
they had been as represented by the defendant.    These
two last mentioned requests set forth the proper rule of
damages if the corporation was the plaintiff.    *Morse* v.
*Hutchins,* 102 Mass. 439.    *McKinley* v. *Warren,* 218 Mass.
310.    *Leader* v. *Kolligan,* 262 Mass. 63.    *Piper* v. *Childs,*
290 Mass. 560.    *David* v. *Belmont,* 291 Mass. 450.    Am.
Law Inst. Restatement: Torts, § 546.    There was, how-
ever, no evidence of the financial worth of the defendant
or of his mother at the times the notes were delivered to
the plaintiff.    Neither was there any evidence of the value
of the real estate included in the mortgages, after making
a proper allowance on account of the failure of the defend-
ant's wife to join in the mortgages.    The burden is on a
plaintiff in an action for deceit to prove his damages.
*Brackett* v. *Perry,* 201 Mass. 502.    *Connelly* v. *Bartlett,*
286 Mass. 311.    *McCarthy* v. *Brockton National Bank,*
314 Mass. 318.    The evidence did not support a finding
that the notes and mortgages were of only nominal value.
The judge was wrong in making that finding and in ruling
that the measure of damages was the full amount of the
notes.    There is nothing in *Sibley* v. *Hulbert,* 15 Gray,
509, that supports his action.    In that case the purchaser
of a note from the payee who represented that the note

had not been paid was permitted to recover the full amount paid for the note. The jury, in the case cited, were properly instructed that the plaintiff could recover the difference between what the note was actually worth when he purchased it and what it would have been worth if the defendant's representation had been true. The note had no actual value because it had been paid but it would have been worth its face value if it had not been paid because, as the court was careful to point out, the fact that it had been paid was conclusive evidence of the ability of the maker to pay it. The case was correctly decided and the proper rule of damages was applied to the facts. The case did not set up any general rule of law that a holder who is defrauded in purchasing a note is entitled to recover the face value of the note. It decided only that he can so recover when the note is void but would have been worth its face value if there had been no misrepresentation.

The plaintiff contends that if the granting of the twelfth, thirteenth, fourteenth and fifteenth requests was inconsistent with the general finding for the plaintiff, then the defendant's remedy was a motion for a new trial and not a request for a report. It has been held that, where a general finding is inconsistent with the granting of a request, the remedy is either a motion to correct the ruling made on the request or a motion for a new trial. *Charles Street Garage Co.* v. *Kaplan*, 312 Mass. 624. *Lander* v. *Samuel Heller Leather Co. Inc.* 314 Mass. 592. There was no inconsistency here between granting the requests and the general finding. The error here was in applying correct principles of law to a fact, that is, that the notes and mortgages were of only a nominal value, which could not properly be found from the evidence. The question whether the evidence warranted such a finding of fact was a question of law, which the defendant was entitled to have reviewed. *Lanoue* v. *Buscicchia*, 261 Mass. 236. *Massachusetts Lubricant Corp.* v. *Socony-Vacuum Oil Co. Inc.* 305 Mass. 269. *Nichols* v. *Donahoe*, 309 Mass. 241. *Hurley* v. *Ornsteen*, 311 Mass. 477.

We have confined our attention to the three contentions

made by the defendant. In view of what has been said, we need not discuss further the action of the judge with reference to the various requests. As the case appears to have been fully tried upon the merits, the new trial must be confined to the determination of damages, which are to be assessed in accordance with this opinion. The order of the Appellate Division dismissing the report is reversed, and the case is remanded to the District Court for further proceedings in conformity with this opinion.

*So ordered.*