**PAMELA AMUSEMENT CO., Inc.**

v.

**SCOTT JEWELRY COMPANY and**
Matthew J. Brown.

Civ. A. No. 58–442.

United States District Court
D. Massachusetts.

May 25, 1960.

Clarence P. Kudisch, Alfred Sigel, Boston, Mass., for plaintiff.

Lawrence R. Cohen, Boston, Mass., for defendant.

FRANCIS J. W. FORD, District Judge.

Defendant Scott Jewelry Co.; Inc. is a New Hampshire corporation. It is one of a group of corporations operating a chain of retail jewelry stores in various cities. Each store is organized as a separate corporation. In general the stockholders of each of these corporations are drawn from the same group of persons, although the number of shares owned by any individual varies from corporation to corporation. The defendant corporation operates a retail jewelry store in Manchester, New Hampshire. Defendant Brown is its vice president, treasurer and general manager and apparently occupies a similar position in each of the other corporations. He owns eighteen of the eighty shares of stock of the New Hampshire corporation.

In July of 1956 Rena Realty Corporation was the owner of a building in Stamford, Connecticut, in which was located a store at 455 Main Street then occupied by Finlay-Straus Company under a lease expiring August 31, 1957. Finlay-Straus conducted a retail jewelry store on the premises under the name of Kay Jewelry Company. During July and August negotiations took place between Brown and Leon W. Strong, the treasurer of Rena Realty, which culminated in the execution on August 28, 1956 in New York of a document purporting to be a lease of the store premises then occupied by Finlay-Straus for a period of ten years from August 31, 1957. The lessee named in this document was Scott Jewelry Company of Stamford, Connecticut, and the lease was signed by Brown as treasurer of that corporation. No such corporation then existed, and no such corporation has ever been formed. Strong knew at that time that there was no such corporation but had been informed by Brown that it was intended to form a Connecticut corporation to conduct a jewelry business on the premises in question.

This purported lease contained the following provision:

"In the event that the Finlay Straus Corp. (Kay Jewelry Company), present occupant of the above-described premises, and the Lessor enter into a new or renewal lease of said premises at any time prior to June 15, 1957, then and in that event this lease shall immediately become null and void and neither party shall have any cause of action against the other under its terms; provided, however, that on making any such new or renewal lease, the Lessor shall forthwith give written notice to the Lessee thereof."

In the course of the negotiations Brown informed Strong that Scott Jewelry Company would not go into competition in any city with Finlay-Straus and was interested in the lease only on condition Finlay-Straus left Stamford. Nothing to this effect was incorporated in the lease as drawn by Rena Realty's attorneys. At the time of the signing of the lease Brown objected to the wording of the clause referring to Finlay-Straus, and it was agreed orally that the lease was not to go into effect unless Finlay-Straus left Stamford.

At the request of Strong the following guaranty was endorsed on the lease and signed by Brown:

"For a valuable consideration, receipt whereof is hereby acknowledged, the Scott Jewelry Company, a corporation having an office for the transaction of business located in Manchester, New Hampshire, hereby guarantees that its subsidiary, the Scott Jewelry Company of Stamford, Connecticut, will well and faithfully perform all the covenants

and agreements on its part to be performed under the within and foregoing lease.

"Scott Jewelry Company
"By s/ Matthew J. Brown (L.S.)
 Its Treasurer."

Before signing it Brown informed Strong that he had received no specific authorization from defendant corporation to sign such a guaranty.

During August 1956 negotiations were also going on between Strong and one Harry Brandt which culminated in the execution on August 31, 1956, of a lease from Rena Realty to Brandt of the entire building involved here for a period of fifteen years from September 1, 1956. This lease was made subject to existing leases, the leases of the store at 455 Main Street to Finlay-Straus and Scott Jewelry Co. being specifically named. There was no evidence of whether Strong in the course of these negotiations said anything to Brandt about the non-existence of Scott Jewelry Company of Stamford, or the oral agreement with respect to Finlay-Straus' leaving Stamford. By a document dated September 19, 1956, Brandt assigned his lease to the plaintiff here, The Pamela Amusment Company, Inc., a New York corporation of which he is the principal stockholder.

Finlay-Straus did not renew its lease of the store in question and vacated the premises by August 31, 1957. It did continue, however, to conduct a retail jewelry business in Stamford. Plaintiff in June or July of 1957 notified Brown that the premises would be vacated. Scott Jewelry Company of Stamford has never been organized and no one on its behalf has ever occupied the store in question or paid the rent therefor.

▆ Plaintiff's claim against the defendant corporation is based solely on its alleged liability on the guaranty purportedly executed on its behalf. The issue is whether Brown had any authority to execute such a guaranty on behalf of the corporation. Undoubtedly Brown as treasurer and managing director had authority to act for the corporation in the transaction of the ordinary affairs of its regular business. But the act involved here is the giving of a guaranty for a non-existent corporation. Although the guaranty refers to the Connecticut corporation as a subsidiary, it was not a subsidiary and there was no evidence that it was ever intended to be a subsidiary of defendant. In the light of the way in which the other Scott Jewelry corporations had been set up, it would in all probability have been a separate corporation in which defendant corporation would own no interest, carrying on a distinct and separate business. There is nothing to indicate how far it would have the same stockholders as defendant corporation, or how closely the interests of stockholders in the two corporations would coincide. Even if it be assumed that the giving of such a guaranty would not be *ultra vires* the defendant corporation, the giving of such a guaranty would not fall within the authority of Brown to act for the corporation in its ordinary affairs. Authority to perform such an act, doubtfully within the power of the corporation in any event, and certainly lying outside the scope of its ordinary and regular business, would have to be given specifically by the directors. In re Gilchrist Co., D.C., 278 F. 235, affirmed Wm. Filene's Sons Co. v. Gilchrist Co., 1 Cir., 284 F. 664. The directors of defendant gave Brown no express authority to give such a guaranty and there was no evidence of any act of defendant corporation which would create any apparent authority for Brown so to act. Hence it must be held that Brown had no authority to make such a guaranty on behalf of the corporation and the corporation is not liable on it.

▆ Plaintiff suggests various grounds on which it contends Brown individually should be held liable to it. It is argued that Brown, acting as agent for a non-existent principal, became himself liable as principal on the contract, and also that in executing a guaranty which he had no authority to make he became liable for breach of an implied warranty

of authority. Any such liability would be in the first place to Rena Realty and any rights of the present plaintiff on these grounds are derived from its ultimate assignor, Rena Realty, and can rise no higher than Rena Realty's rights. But on neither of these grounds can Brown properly be held liable to Rena Realty. When an agent enters into a contract on behalf of a purported principal known to all parties to be non-existent, inference may be drawn that a valid contract between existent parties was intended and that therefore it was intended that the so-called agent should be bound as a principal. But whether he is really so bound depends on the intention of the parties and must be decided on the facts of the individual case. Restatement of Agency, 2d § 326. Here it is clear that Rena Realty through its agent Strong knew that the proposed Connecticut corporation did not exist. There is nothing to show that there was any intent to have Brown become personally liable on the lease. It is clear from Strong's testimony on his deposition that what he really relied on, and the only thing he was really interested in getting, was the guaranty of the New Hampshire Scott Jewelry Company, whose existence and financial responsibility he knew. Neither would Brown be liable to Rena Realty on any warranty of authority to sign the guaranty since he expressly informed Strong before signing it that he did not know whether he had such authority and that he had not expressly been given such authority by the New Hampshire corporation.

■ Plaintiff further contends that Brown is liable to it for misrepresentation on the ground that the lease and guaranty signed by him at least impliedly represented that the Scott Jewelry Company of Stamford was an existing Connecticut corporation and also that he had authority to execute a guaranty on behalf of the defendant New Hampshire corporation. These representations in these documents were made to Rena Realty, which would have no grounds for an action based on them, since Strong knew the true facts and hence Rena did not act in reliance on any implications to the contrary in the documents.[1] These representations were not made to plaintiff, which took no part in the transaction. There is no evidence that Brown made them with any intent that plaintiff should rely on them, or had any reason to believe that plaintiff would ever be interested in the property. This is not a case in which defendant while making no representations to plaintiff made them to a third party with the intention, or at least the knowledge, that they would be repeated to the plaintiff with intent that he should rely on them. Nor is it one of those cases where a defendant has been held liable for a misrepresentation embodied in a negotiable instrument evidently intended to pass freely into the hands of others who would take it in reliance on the statements therein. National Shawmut Bank of Boston v. Johnson, 317 Mass. 485, 58 N.E.2d 849; Peoples National Bank of Boston v. Dixwell, 217 Mass. 436, 105 N.E. 435.

Moreover, there was no evidence that plaintiff relied on any misrepresentation contained in the documents. Brandt, plaintiff's assignor and principal stockholder, who negotiated with Strong, did not testify. There was no evidence as to what Strong may have told him as to the true facts concerning the Scott Jewelry lease, and hence nothing to show that he relied on that document or was misled by anything implied therein.

The conclusion must be that plaintiff has failed to establish any ground for holding either of these defendants liable to it.

Judgment will be entered for defendants.

1. Even if Brown had made misrepresentations to Rena Realty, under New York law plaintiff could not as assignee of the lease recover damages for the misrepresentation unless Rena Realty also specifically assigned its cause of action for fraud. Nearpark Realty Corp. v. City Investing Co., Sup., 112 N.Y.S.2d 816.