Gershengorn, J.
The plaintiff, Ralph Bruno (“Bruno”), brings this action against the defendants, Michael Restuccia (“Restuccia”) and Michael Capizzi (“Capizzi”), alleging numerous counts stemming from an agreement between the plaintiff and Lincoln Capital & Trust, LLC, a company owned and controlled by the defendants, to redevelop an oceanfrontinn located in Maine. The matter is now before this court on Bruno’s motion for summary judgment against Restuccia on Count V (Fraudulent Misrepresentation) *648 of his Complaint. Specifically, Bruno alleges that in the course of negotiating the agreement, Restuccia made fraudulent representations regarding certain conditions under which Lincoln would provide financing for the redevelopment. Restuccia opposes the motion. For the reasons stated below, the plaintiffs motion for summary judgment on Count V (Fraudulent Misrepresentation) is ALLOWED.
Background
The undisputed material facts, as established by the summary judgment record and taken in a light most favorable to the non-moving party, are as follows. At all relevant times Bruno was the majority shareholder of Port Resort Reality Corp. (“Port Resort”), a Maine Corporation. Port Resort held title to 17.6 acres of oceanfront property in Kennebunkport, Maine, which included the Shawmut Inn, an eighty-room inn, and other buildings (“Shawmut Inn Property”). Between late 1997 and early 1998, Bruno formed an interest in redeveloping the Shawmut Inn Property into a larger and more modem high-end facility. It was during this time that Bruno discussed his ideas with Capizzi.
Capizzi, who had known Bruno since his childhood and who had worked with Bruno on his attempt to develop a tract of land he owned in Dorchester, took this idea to Restuccia. Restuccia, who had been a software salesman by profession, developed an interest in real estate development in the 1990s, and became involved with some small residential real estate projects during this time. Restuccia took commercial real estate related night courses at Northeastern University and became involved in a development enterprise with a partner. Together, they completed three real estate development projects in which Restuccia assisted in obtaining permitting and financing.
Then, by 1998, Restuccia, having decided that he wanted to pursue real estate development on a full-time basis, approached Capizzi. Capizzi, who held himself out as a successful real estate developer, and Restuccia agreed to form a joint real estate development business, Lincoln Capital and Trust, LLC (“Lincoln”). Restuccia and Capizzi signed a written agreement creating Lincoln for the business purpose of real estate acquisition and development.
In May 1998, in order for Lincoln to look into the potential of being a development partner with Bruno, Restuccia, Capizzi, Bmno, and Bruno D’Agostino (“D’Agostino"), Bruno’s architect, visited the Shawmut Inn Property. Subsequently, Restuccia and Capizzi worked with D’Agostino to create preliminary plans and budgets for the development of the Shawmut Inn Property.
In discussions throughout May 1998, Bruno informed Restuccia and Capizzi that there was a requirement of $3,000,000, to get the project “free and clear.” Restuccia considered this amount as an acquisition cost, which was necessary to, among other things, pay off money owed to Atlantic Bank. Ultimately, by the end of May 1998, Restuccia understood that the estimated cost of the development project for the Shawmut Inn Property was between 12 to 20 million dollars. On July 7, 1998, Restuccia, on behalf of Lincoln, and Bruno signed a letter (“July Letter”) which Restuccia had personally entered into his computer. The July Letter read, in relevant part:
Lincoln Capital & Trust agrees to provide the following financial commitments to develop the Shawmut Inn, with or without lender participation, contingent upon an agreement for a 50% equify participation by Lincoln Capital & Trust. . .
B) Provide all necessary financing, contingent upon satisfactory review of all outstanding documentation as it relates to normal lending practices and criteria. This financing can be structured to accommodate a phased as well as a complete development approach.
C) Satisfy the $25,000 July renewal fee to Atlantic Bank to cover the next one year extension.
D) At closing, a buyout of the following shall be provided:
1) $1.4 million to Atlantic Bank [ ]
2) $600,000 to be paid to KBT
3) $500,000-$700,000 to be paid to the holders of the 25% equity position in Port Resort Co.
4) $200,000-$300,000 to clear any related “documented” expenditures such as title.
E) Sixty days from the expiration of the appeal period of final approvals by the town planning board LCT shall perform. This performance can begin upon obtaining legal opinion on such issues as the existence of proper zoning . . .
(Emphasis added.)
Prior to the signing of the July Letter, Restuccia wanted to include a provision that has been described as either a financing contingency or a risk of loss allocation. The provision provided something to the effect that Lincoln was prepared to go forward as developmental partners for the Shawmut Inn Properly project provided that appropriate funding could be obtained. This provision was deleted from the July Letter because Capizzi informed Restuccia that if such wording was left in the July Letter, Bruno would not go through with the deal.
In November 1998, the parties entered into a Lending and Contribution Agreement (“Agreement”). This Agreement did not contain the language “with or without lender participation.” However, the document initially included language that read “(which 45 day period shall be extended to 60 days to accommodate a loan closing with an institutional lender under a then existing firm loan commitment).” This language was stricken from the final Agreement.
*649 At the time the July Letter was signed and thereafter, the proposed plan was for Lincoln to put up 10% of the $3,000,000 acquisition cost and to borrow the remaining 90% of that sum, as well as the entire amount needed to fund the development of the Shawmut Inn Property. The remaining financing was to come from David Ross (“Ross”), a mortgage broker, and Finova, the mortgage company were Ross worked. In June 1998, Ross advised Restuccia that Fremont Investment & Loan (“Fremont”) was interested in financing the development project. Sometime in September 1998, with the knowledge of all parties, Ross went to the Shawmut Inn Property and conducted a site visit. Prior to securing a firm term sheet with Fremont, however, Ross required that Restuccia and Capizzi provide personal financial statements.
In December 1998, it became clear to Restuccia that financing from Fremont would not materialize because Capizzi would not provide his financial statement which was earlier requested of him. After Capizzi’s refusal to cooperate in Lincoln’s attempt to get outside financing, Restuccia and Lincoln did not go forward with the deal.
Discussion
Summaiy judgment shall be granted only where there are no genuine issues of material fact in dispute and where the summary judgment record entitles the moving parly to judgment as a matter of law. Cassesso v. Comm’r of Con., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court views the facts “in the light most favorable to . . . [the non-moving party], taking all the facts set forth in its supporting affidavits as true.” G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991). The moving party bears the burden of affirmatively demonstrating the absence of a genuine issue of material fact on eveiy relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party demonstrates the absence of a triable issue, “the non-moving party may not simply rest on pleadings, ‘but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.’ ” Correllas v. Viveiros, 410 Mass. 314, 317 (1991), quoting Mass.R.Civ.P. 56(e). “A complete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial” and mandates summaiy judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
Bruno argues that by placing the words “with or without lender participation” in the July 7, 1998 Letter and removing the financing contingency from the Contribution and Lending Agreement, Restuccia made fraudulent misrepresentations as to the conditions under which Lincoln would provide financing for the Shawmut Inn Property redevelopment project. When there is a misrepresentation made to induce a party to enter into a contract, the party making the misrepresentation can be liable for fraud. See McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 712-13 (1990). In order to succeed on a claim for fraudulent misrepresentation, the plaintiff must demonstrate “that the defendant made a false representation of a material fact with knowledge of its falsify for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.” Danca v. Taunton Sav. Bank, 385 Mass. 1, 8 (1982), quoting Barrett Assocs. v. Aronson, 346 Mass. 150, 152 (1963); see also Zimmerman v. Kent, 31 Mass.App.Ct. 72, 77 (1991). Under Massachusetts law, “statements of present intention as to future conduct may be the basis for a fraud action if. . . the statements misrepresent the actual intention of the speaker and were relied upon by the recipient to his damage.” McEvoy, 408 Mass. at 709. Actual intent to deceive on the part of the defendant need not be shown; “[i]t is sufficient to show ‘proof of a statement made, as of the party’s own knowledge, which is false, provided that the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge.’ ” Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458-59 (2002), quoting Powell v Rasmussen, 355 Mass. 117, 118 (1969). Moreover, in order for liability to exist, “[t]he plaintiffs reliance on the defendant’s false statement must be reasonable and justifiable under the circumstances.” Collins v. Huculak, 57 Mass.App.Ct. 387, 391 (2003); see also Restatement (Second) of Torts 537 (1977).
The first question that must be answered, therefore, in addressing Bruno’s claim for fraudulent misrepresentation, is whether Restuccia made a false statement of material fact. See Zimmerman, 31 Mass.App.Ct. at 78-80. The answer to this crucial inquiiy turns upon the meaning of the words “with or without lender participation.” Bruno maintains that these words are unambiguous, and accordingly, Restuccia clearly represented that Lincoln would provide funding for the redevelopment project even if Lincoln was unable to secure outside financing support; meaning Lincoln would finance the entire project if needed. In stark contrast, Restuccia contends that the words “with or without lender participation,” are ambiguous and the extrinsic evidence demonstrates that he never intended that Lincoln would be solely responsible for financing the redevelopment project. Instead, Restuccia argues that the words “with or without lender participation” signify a risk of loss allocation as to funds being advanced in the event the project failed, or in the alternative, the provision gives Lincoln the option of proceeding without an outside lender at its discretion.
*650 As a matter of law, this court finds that the words “with or without lender participation” are unambiguous and can only be interpreted as a written representation by Restuccia that Lincoln would provide financing to Bruno regardless of whether outside lenders participated in the financing. It is beyond even a strained reading of the language to interpret the words “with or without lender participation” as a mere risk of loss allocation, as Restuccia urges this court to do. Further evidence in the record supports this court’s interpretation of “with or without lender participation.” According to the undisputed evidence in the summary judgment record, Capizzi informed Restuccia that Bruno would not go through with the deal unless a provision, essentially providing that Lincoln was prepared to go forward as developmental partners provided that appropriate funding could be obtained, was not included in the July Letter. Furthermore, there is no dispute in the summary judgment record that Lincoln never intended to provide complete financing for the project, therefore, Restuccia’s representation to the contrary was clearly false.
There can also be no dispute that such a representation was material. Materiality depends upon “whether ‘a reasonable man would attach importance [to the fact not disclosed] in determining his choice of action in the transaction in question.’ ” Zimmerman, 31 Mass.App.Ct. at 78, quoting Rogen v. Ilikon Corp., 361 F.2d 260, 266 (1st Cir. 1966). There is no question that Bruno attached importance to Restuccia’s representation regarding the terms of lender participation in the financing of the redevelopment project. The undisputed evidence that Bruno would not go forward with the deal unless a provision in the July Letter relating to Lincoln securing appropriate finding was removed, establishes materiality beyond doubt. Finally, it is irrelevant as to whether the provision at issue was a false statement of fact, because when a misrepresentation about a future event is made, liability for fraud can still be found. McEvoy, 408 Mass. at 709. Such evidence is sufficient to establish as a matter of law, that Restuccia made a material false statement to Bruno in order to induce him into entering the deal for the redevelopment of the Shawmut Inn Property.
The court must now address whether Bruno reasonably and detrimentally relied upon Restuccia’s statements. See Zimmerman, 31 Mass.App.Ct. at 81. Restuccia argues that Bruno, being a man of “considerable real estate development experience” never did any independent due diligence to determine whether or not Lincoln was able to provide financing for the redevelopment project without lender participation. Therefore, Restuccia maintains, Bruno could not have reasonably and justifiably relied on his representations regarding financing. Importantly, “[t]he recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation.” Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 468 (2003), quoting Restatement (Second) of Tort 540 (1977). Only when the recipient of the fraudulent misrepresentation “knows that it is false or its falsity is obvious to him” will he not be justified in his reliance. Kuwaiti Danish Computer Co., 438 Mass. at 468, quoting Restatement (Second) of Tort 541 (1977). Therefore, Bruno was not required to conduct an independent investigation of Restuccia’s finances, but rather he was entitled to rely on the representations made during their business dealings. See Yorke v. Taylor, 332 Mass. 368, 374 (1955) (indicating that reliance is justifiable unless the statement is “preposterous or palpably false”); see also McEvoy, 408 Mass. at 713; Zimmerman, 31 Mass.App.Ct. at 81. As to the final element of detrimental reliance, while the parties agree that the extent of such reliance (in terms of damages) is still disputed and must be determined at trial, the fact that there was detrimental reliance is clear. Significantly, the summary judgment record provides undisputed evidence that Bruno would not have entered into the agreement with Lincoln but for the deletion of a provision in the July Letter dealing with the contingency of appropriate financing. When signing the July Letter, Bruno was acutely aware of the excluded provision, as well as the “with or without lender participation” language that was explicitly included. It is only reasonable to conclude that Bruno relied upon these representations when he signed the July Letter and later, entered into the Agreement. Ultimately, the decision to enter into the development deal with Restuccia based in part upon these representations, is sufficient detrimental reliance. See Nat’l Shawmut Bank of Boston v. Johnson, 317 Mass. 485, 490 (1945).
Restuccia attempts to avoid liability for his fraudulent misrepresentations by focusing on Bruno’s conduct. Specifically, Restuccia alleges that Bruno’s own fraudulent conduct and false testimony at his deposition prevents him from succeeding in his claim against Restuccia. This argument holds no merit. Indeed, Restuccia cites to no case law under which such a finding has been made, but instead relies on a lone Superior Court decision which involved a party that was denied equitable relief because of his unclean hands. In this case, none of the alleged fraudulent conduct on Bruno’s part has any effect in negating the elements of Restuccia’s misrepresentation. Therefore, such assertions by Restuccia do not serve as a bar to this court’s allowance of summary judgment on behalf of Bruno.
ORDER
For the reasons stated above, the plaintiff s motion for summary judgment on Count V of the complaint is ALLOWED.