Nova Assignments, Inc. *vs.* Stephen T. Kunian & another.[1]

No. 08-P-1451.

Suffolk. May 11, 2009. - June 16, 2010.

Present: Grainger, Brown, & Rubin, JJ.

*Practice, Civil,* Summary judgment. *Attorney at Law,* Attorney-client relationship, Negligence. *Negligence,* Attorney at law, Standard of care. *Real Property,* Purchase and sale agreement. *Fraud. Consumer Protection Act,* Unfair act or practice.

In a civil action arising from a dispute over legal fees, the judge erred in granting summary judgment in favor of the defendants (an attorney and his law firm) on the claim that the defendant attorney committed a breach of a duty of care owed to the plaintiff's predecessor in interest (a law firm that had represented the defendant attorney's client in the underlying matter prior to his taking over the representation), where the record contained sufficient evidence to support a conclusion that the defendant attorney, knowingly or negligently, personally had made false representations to the plaintiff's predecessor that he would arrange for the escrow of certain funds that the plaintiff's predecessor claimed as legal fees, and that he would hold those funds in escrow himself, as well as that the plaintiff's predecessor reasonably had relied on the defendant's representations to its detriment. [37-39] Brown, J., concurring.

In a civil action arising from a dispute over legal fees, the judge erred in granting summary judgment in favor of the defendants (an attorney and his law firm) on a claim of aiding and abetting a client in defrauding the plaintiff's predecessor in interest (a law firm that had represented the client in the underlying matter prior to the defendant attorney's taking over the representation), where there was sufficient evidence in the record to support an inference that a provision in a purchase and sales agreement that the defendant attorney prepared regarding the property at issue in the underlying matter, stating that the buyer agreed not to contact the plaintiff's predecessor, was intended to conceal from the plaintiff's predecessor information material to its rights to the disputed legal fees; and where the claim was properly presented and was assignable. [39-42] Brown, J., concurring.

In a civil action arising from a dispute over legal fees, the judge erred in granting summary judgment in favor of the defendants (an attorney and his law firm) on a claim that the defendant attorney's conduct amounted to an unfair and deceptive act or practice in violation of G. L. c. 93A, § 11, where there was sufficient evidence in the record to support an inference

[1]Eckert Seamans Cherin & Mellott, LLC.

that a provision in a purchase and sales agreement that the defendant attorney prepared regarding the property at issue in the underlying matter, stating that the buyer agreed not to contact the plaintiff's predecessor in interest (a law firm that had represented the defendant's client in the underlying matter prior to his taking over the representation), was intended to conceal from the plaintiff's predecessor information material to its rights to the disputed legal fees, especially in light of the defendant attorney's earlier representations to the plaintiff's predecessor that he would arrange for the escrow of certain funds that the plaintiff's predecessor claimed as legal fees, and that he would hold those funds in escrow himself. [42-44] BROWN, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on July 15, 2003.

Motions for summary judgment were heard by *Geraldine S. Hines*, J., and a motion to dismiss was heard by *Christopher J. Muse*, J.

*Nicholas J. Nesgos* for the plaintiff.

*Peter F. Carr, II*, for for the defendants.

RUBIN, J. In this case we review a Superior Court judge's order granting summary judgment in favor of the defendants, attorney Stephen T. Kunian and his law firm Eckert Seamans Cherin & Mellott, LLC (Eckert). The plaintiff, Nova Assignments, Inc. (Nova), is the assignee of the law firm Posternak Blankstein & Lund, LLP (PBL).[2] Our standard of review of the judge's order granting summary judgment is the familiar one. We review the grant of summary judgment de novo, viewing the evidence contained in the summary judgment record in the light most favorable to the nonmoving party, in this case Nova. *Gray* v. *Giroux*, 49 Mass. App. Ct. 436, 438 (2000).

## I.

The following facts are taken from the summary judgment record. PBL represented KCI Management Corporation (KCI) in litigation to secure KCI's rights to develop certain real estate in the Hyde Park area of Boston. KCI began to dispute the reasonableness of PBL's fees, at which point PBL threatened to withdraw from its representation of KCI and to attach the Hyde

---

[2]There is affidavit evidence that Nova is a "captive corporation" formed for the administrative convenience of PBL. Its precise relationship to PBL is irrelevant to our disposition.

Park real estate for payment of its fees. Kunian then commenced representation of KCI in this legal fee dispute.

On December 28, 2000, Kunian sent a letter to PBL memorializing an agreement between PBL and KCI. At that time, Kunian was an attorney at Lyne Woodworth & Evarts, LLP (Lyne Woodworth). The letter states that PBL agreed to pursue "vigorously and conscientiously" an appeal then pending in this court concerning the real estate in Hyde Park. KCI agreed that it would "not transfer the real estate [in Hyde Park] without putting an agreed upon amount in escrow pending resolution of the legal fee[]" dispute. The letter states that PBL and KCI's principal, Alexis P. Kisteneff, would attempt to resolve the legal fee dispute and that if they could not come to an agreement, they would "enter into some agreed upon form of mediation." The letter also states, "Based on this undertaking by [KCI], [PBL] will take no legal action against [KCI] for the collection of the legal fees it alleges are owed until completion of the appeal process." According to the deposition testimony of PBL partner David Saltiel, Kunian also represented in a telephone conversation with Saltiel several days before the December 28, 2000, letter, that he would "arrange for the escrow of the funds" and that he himself would hold them in escrow: "He [Kunian] recognized, if we [i.e., PBL] were going to go forward we had to have some security. So he offered to escrow — to arrange for the escrow of the funds and to hold them in escrow. . . . He also indicated particularly that he would be holding the escrow because I remember saying, 'I trust you, Steve.' We had had a long relationship and I trusted him that if he said he would hold in escrow, I would be very comfortable that I didn't have to worry about the funds disappearing . . . ." In March, 2001, Kunian left Lyne Woodworth and joined Eckert, where he continued to represent KCI.

In July, 2002, shortly after PBL obtained a decision from this court allowing KCI to develop the Hyde Park real estate,[3] KCI entered into a purchase and sale agreement for the sale of that real estate. This agreement contains an express provision, drafted by Kunian, which states, "Buyer pledges complete confidentiality in making this offer and in the consummation of this purchase.

---

[3]See *KCI Mgmt., Inc.* v. *Board of Appeal of Boston*, 54 Mass. App. Ct. 254 (2002).

Buyer agrees to not contact any of Seller's contractors includ-ing . . . Attorneys, Posternak, Blankstein & Lund . . . ." In December, 2002, KCI sold the Hyde Park real estate for $1,750,000. Kunian acted as the closing attorney. From the proceeds, he paid both his former and present law firms for their legal services. He did not, however, escrow any funds for PBL, but instead wired the net proceeds to KCI outside of Massachusetts.

According to Saltiel's affidavit, the substance of which he testified to in his deposition, when Saltiel learned about the sale of the property, he "called Kunian regarding his prior assurance about the escrow and the now critical issue of the payment of PBL's fees. Kunian's response was that he 'forgot' about the escrow arrangement at the time of the closing transaction. Kunian further stated that 'it would not have made a difference anyway'; he said that had he remembered[,] he would have resigned as counsel to KCI, because [Kisteneff] would never have put the money in escrow for PBL." Kunian himself testified in his deposi-tion that he "completely forgot about the letter." He further testi-fied that if he had remembered "that I had signed a letter," he would have "advised my client, and probably, depending on my client's instructions, withdrawn as counsel."

In 2003, Nova, as assignee of PBL, filed its complaint in the instant action against KCI, Kisteneff, Kunian, and Eckert seek-ing, among other things, legal fees totaling in excess of $193,000. The Superior Court judge subsequently granted the motion of Kunian and Eckert for summary judgment. KCI's and Kisten-eff's motions for summary judgment were denied, and the claims against them were subsequently dismissed by agreement of the parties. Nova filed a motion for reconsideration of the judge's order granting Kunian's and Eckert's motion for summary judg-ment, which was denied. Nova timely filed this appeal.

II.

A.

Nova first claims that, if the facts related above are proven, Kunian is personally liable to it for a breach of a duty of care owed to PBL. Nova's theory is that Kunian knowingly or

negligently made false personal representations, distinct from representations that Kunian may have made on behalf of his client, and that PBL foreseeably relied to its detriment on those personal representations.

In certain circumstances, a lawyer may owe a duty of care to a nonclient for the knowing or negligent provision of false information. See *Kirkland Constr. Co.* v. *James*, 39 Mass. App. Ct. 559, 561-564 (1995) (*Kirkland*). See also Restatement (Second) of Torts § 552 (1977). The defendants argue that no such duty may be imposed in this case, citing *Lamare* v. *Basbanes*, 418 Mass. 274, 276 (1994) (*Basbanes*), for the proposition that "the court will not impose a duty of reasonable care on an attorney if such an independent duty would potentially conflict with the duty the attorney owes to his or her client." But the rule announced in *Basbanes* is inapposite here. As we explained in *Kirkland*, *supra* at 562, the limitation in *Basbanes* relates to claims that the law should imply a duty of care toward an adversary, essentially an attorney-client duty, in an attorney's provision of services to his own client. See, e.g., *Basbanes*, *supra* at 276; *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 524, cert. denied, 493 U.S. 894 (1989); *Spinner* v. *Nutt*, 417 Mass. 549, 552 (1994). See also *Page* v. *Frazier*, 388 Mass. 55, 63 (1983). Nova does not raise such a claim, but rather a claim of detrimental reliance on a false representation as described in *Kirkland*. Bar membership provides no cloak of immunity for an attorney's false representations. Rather it imposes a high duty of ethical conduct in the practice of our shared profession.

Reading the summary judgment materials in the light most favorable to Nova, there is evidence that Kunian made personal representations to PBL in the negotiations leading up to the December 28, 2000, letter, both that he would arrange for the escrow of the funds and that he himself would hold them in escrow. Kunian's alleged representations contain promises by Kunian about actions he will take, and necessarily represent that as a matter of fact, Kunian had both the power and the intention to ensure that the escrow account would be created and that he would act as the escrow agent.[4]

---

[4]Nova has not brought a claim on a theory of breach of contract or promissory estoppel, and we express no opinion about whether such a claim could succeed in these circumstances.

While of course we do not decide liability, there is sufficient evidence in the summary judgment record to support a finding that these representations were knowingly or negligently false. Drawing every reasonable inference in favor of Nova, the summary judgment evidence could support a conclusion that less than eighteen months after making these representations, Kunian drafted a purchase and sale agreement that was part of a scheme to defraud PBL by failing to inform it of the sale of the property and by then wiring the funds out of State rather than placing them in escrow. There is no evidence that Kunian acted in any way surprised by the instruction to include in the purchase and sale agreement the provision specifically requiring the buyer not to inform PBL about the sale, nor did he take any action an attorney acting in good faith might have taken, for example, seeking to withdraw as counsel. The jury would not be obliged to find credible Kunian's own testimony that he forgot about KCI's obligations to PBL. They might reasonably infer that Kunian knew at the time he made his representations that he would not place the money in escrow and serve as an escrow agent, or that he should have known at that time that he would not be able to do so.

Whether PBL in fact relied on Kunian's representations, and whether any such reliance was reasonable, are questions that are properly for the jury and that will depend for their resolution on the jury's evaluation of all the facts and circumstances. Read in the light most favorable to Nova, however, the evidence could support a finding that PBL's reliance on Kunian's representation was reasonable. The defendants' motion for summary judgment on this claim should have been denied.

## B.

Nova next focuses upon Kunian's preparation of the purchase and sale agreement containing the explicit term that the buyer of the Hyde Park real estate not contact PBL even though the sale of that real estate triggered KCI's obligations to PBL under the December 28, 2000, letter. This provision in the purchase and sale agreement, Nova argues, amounts to a specific requirement that the buyer not inform PBL of information material to a contract between PBL and KCI. Indeed, Nova argues that, if

proven, the facts alleged might well amount to a violation of the Massachusetts Rules of Professional Conduct, Mass.R.Prof.C. 3.4, 426 Mass. 1389 (1998), which provides:

> "A lawyer shall not:
>
> . . . .
>
> "(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless: (1) the person is a relative or an employee or other agent of a client; and (2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information."

Nova does not contend that a violation of the Rules of Professional Conduct would, itself, give rise to a private cause of action by PBL against Kunian. Rather, Nova contends that Kunian's conduct, if proven, was independently actionable both under the common law and under G. L. c. 93A, § 11.

Nova first alleges that in drafting the purchase and sale agreement as he did, Kunian aided and abetted KCI in defrauding PBL. We agree that summary judgment for the defendants should not have been granted on this claim. There is sufficient evidence contained in the summary judgment record to support an inference that the provision in the purchase and sale agreement was intended to conceal from PBL information material to its rights under the December 28, 2000, letter. The evidence thus supports an inference that Kunian took action to ensure that PBL specifically would not hear of the sale of the Hyde Park real estate, knowing that his client was not going to inform PBL, and was not going to abide by the terms of the December, 2000, agreement but was, rather, going to have the funds wired out of State. This evidence is sufficient to require trial on Nova's claim for aiding and abetting fraud.

The defendants argue that Nova has failed to present its fraud claim properly. Under Mass.R.Civ.P. 9(b), 365 Mass. 751 (1974), "In all averments of fraud, mistake, duress or undue influence, the circumstances constituting fraud, mistake, duress or undue influence shall be stated with particularity" in the complaint. The word "fraud," however, need not be used. See *Jurgens* v.

*Abraham*, 616 F. Supp. 1381, 1386 (D. Mass. 1985) (construing parallel provision of Fed.R.Civ.P. 9). A review of the complaint in this case reveals that the circumstances constituting fraud were stated there with particularity. The complaint alleges that there was an agreement not to transfer the property without putting an agreed upon amount into escrow, and that KCI, through Kunian at Kisteneff's direction, sold the property, and did not escrow the funds, but rather transferred them out of State and beyond the ability of PBL to reach or attach. It describes Kisteneff's actions as "fraudulent," and this is the alleged fraud that Nova claims was aided and abetted by Kunian. The allegations of the complaint suffice to meet the standard of Mass.R. Civ.P. 9.

The defendants also argue that Nova may not bring its action for aiding and abetting fraud because any such claim held by PBL is not assignable. They rely upon a Supreme Judicial Court case stating that fraud claims may not be assigned. See *National Shawmut Bank* v. *Johnson*, 317 Mass. 485, 488 (1945) (*National Shawmut Bank*).

*National Shawmut Bank* was last cited in a Massachusetts appellate decision for this proposition over fifty years ago. See *Barrett* v. *Hamel*, 337 Mass. 105, 111 (1958). Even if the rule described in *National Shawmut Bank* did cover cases like this, that rule is in substantial tension with the modern cases concerning the assignability of claims. As we said in *Rubenstein* v. *Royal Ins. Co. of America*, 45 Mass. App. Ct. 244, 246 (1998) (*Rubenstein*):

> "It is well settled that most property damage claims and contract actions are assignable. On the other hand, claims for personal injury cannot be assigned, nor can some contract rights be assigned when expressly forbidden by the terms of a contract or by statute, or when substitution would materially change the duty or risk of the obligator. There is no dispute that absent these extraordinary circumstances, a cause of action may be assigned and the assignee may bring the suit in its own name."[5] (Citations omitted.)

---

[5]Even the long-standing personal injury exception identified in *Rubenstein* has been questioned. See *Kippenhan* v. *Chaulk Servs., Inc.*, 428 Mass. 124, 130 (1998) ("There may be reasons why that rule, not recently tested, should be modified").

In *New Hampshire Ins. Co.* v. *McCann*, 429 Mass. 202, 210-212 (1999) (*McCann*), the Supreme Judicial Court faced a situation parallel to the one before us. That case involved a legal malpractice claim, another type of claim that was not traditionally assignable at common law. See *Sibley* v. *Nason*, 196 Mass. 125, 130 (1907). The court held in *McCann, supra* at 209-210, that at least in a case of voluntary assignment, where the allegation is not for personal injury, but for economic loss, the claim was assignable. It also held that there was no public policy reason necessitating the assignment not be enforced. *Id.* at 210-211.

The defendants put forward no reason these conclusions would not be applicable in this case. Even if the rule described in *National Shawmut Bank* does survive (and assuming it would cover the aiding and abetting fraud claim), given *McCann*, we think it would be most unlikely to bar assignment of a claim in a case like this, where there is no personal injury caused by, or other personal character to, the alleged fraud, which in this case is alleged to have resulted in financial damage to a business entity, PBL.

In any event, we need not decide the question because even if the rule barring assignment of fraud claims does survive and has applicability to causes of action for aiding and abetting, the claim in this case does not fall within the *National Shawmut Bank* rule as articulated in the old common-law cases. In this case, the alleged fraud involves injury to PBL's rights under a contract. The court explained in *Bethlehem Fabricators* v. *H. D. Watts Co.*, 286 Mass. 556, 566-568 (1934), that such claims were assignable despite the prevailing general rule barring assignment of fraud claims because they are actions for damage to "specific property," the rights under a contract. Assignability, the court explained, was to be determined by the damages sought, not by the cause of action. *Id.* at 567. We therefore conclude that, regardless of the vitality of the rule described in *National Shawmut Bank*, PBL's aiding and abetting fraud claim was assignable.

### III.

Finally, Nova also alleges that, if proven, Kunian's conduct amounted to an unfair and deceptive act or practice in violation

of G. L. c. 93A, § 11. The evidence is sufficient to require trial on this claim as well.

Speaking broadly, an act or practice is unfair when it is "within at least the penumbra of some common-law, statutory, or other established concept of unfairness; . . . is immoral, unethical, oppressive, or unscrupulous; [or] . . . it causes substantial injury to consumers (or competitors or other businessmen)." *PMP Assocs., Inc.* v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975), quoting from 29 Fed. Reg. 8325, 8355 (1964). Attorneys are not immune from this liability. See *Kirkland*, 39 Mass. App. Ct. at 561-564; *Grand Pac. Fin. Corp.* v. *Brauer*, 57 Mass. App. Ct. 407, 415-419 (2003).

Whether conduct falls within the scope of c. 93A is determined by a review of all of the circumstances, *Martin* v. *Factory Mut. Research Corp.*, 401 Mass. 621, 623 (1988), and is not dependent upon the success or availability of common-law claims for the underlying conduct. See *Massachusetts Farm Bureau Fedn., Inc.* v. *Blue Cross of Mass., Inc.*, 403 Mass. 722, 729 (1989). Certainly, however, conduct that comprises aiding and abetting fraud may come within the ambit of c. 93A. Cf. *Stolzoff* v. *Waste Sys. Intl., Inc.*, 58 Mass. App. Ct. 747, 765 (2003).

There is sufficient evidence contained in the summary judgment record to support an inference that the provision concerning PBL in the purchase and sale agreement was intended to conceal from PBL information material to its rights under the December 28, 2000, letter from Kunian. Moreover, the breadth and flexibility of c. 93A allow for Kunian's earlier representations to inform a trial judge's determination of the unfairness and deception involved in Kunian's subsequent drafting of the purchase and sale agreement. As described above, viewing the facts in the light most favorable to the nonmoving party, they support the inference that Kunian acted to ensure that PBL specifically did not hear of the sale of the Hyde Park real estate, of which KCI was not going to inform it, so that the money from the sale could be transferred out of State rather than into escrow for the benefit of PBL.[6] Such action if proven would not

---

[6]The defendants argue that the c. 93A claim was not assignable. The defendants have not offered any reason why statutory c. 93A claims should not be subject to the ordinary rule that, absent certain "extraordinary circumstances," claims are assignable. See *Rubenstein*, 45 Mass. App. Ct. at 246.

be insulated from liability because it was undertaken by a lawyer. It would be particularly harmful because it was.[7]

## IV.

Having granted summary judgment in favor of Kunian, the judge did not reach the question of whether Kunian's law firm might be held vicariously liable. We express no view on that question, which should be addressed in the first instance by the Superior Court on remand. The judgment is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

BROWN, J. (concurring). The attorney-client privilege should never be used to shield deceptive practices. The manners and "morals of the market place," *Meinhard* v. *Salmon*, 249 N.Y. 458, 464 (1928) (Cardozo, C.J.), have no place in the legal

---

[7]The defendants argue that Kunian was not engaged in "trade or commerce" with PBL and that this case therefore does not fall within the ambit of G. L. c. 93A, § 11. See *Tetrault* v. *Mahoney, Hawkes & Goldings*, 425 Mass. 456, 462-463 (1997). First, however, as described in the text, there is sufficient evidence in the record that the jury must decide whether Kunian made knowing or negligent misrepresentations to PBL upon which it reasonably relied to its detriment. As in *Kirkland,* such misrepresentations if proven would amount to Kunian's injecting himself into the relationship between KCI and PBL sufficiently to support liability under § 11. See *First Enterprises, Ltd.* v. *Cooper*, 425 Mass. 344, 348 (1997) (explaining *Kirkland*). Second, the Supreme Judicial Court has held that an individual acts "in a business context" and is "a proper defendant for c. 93A purposes" if he works closely with and knowingly aids and abets a party in undertaking unfair and deceptive business practices. *Kattar* v. *Demoulas*, 433 Mass. 1, 14-15 (2000). There is sufficient evidence in the record to put to the jury the question whether Kunian's actions in drafting the provision regarding PBL in the purchase and sale agreement were not simply zealous representation of his client, but acts knowingly taken by an "integral member" of KCI principal Kisteneff's team in furtherance of a fraudulent scheme by KCI to dupe PBL, which would bring Kunian's conduct within the scope of § 11 independent of his alleged misrepresentations. *Id.* at 14. See also *St. Paul Fire & Marine Ins. Co.* v. *Ellis & Ellis*, 262 F.3d 53, 67 (1st Cir. 2001). The defendants have not argued that at the time of Kunian's alleged misrepresentations, or at the time of his drafting of the PBL provision in the purchase and sale agreement, the relationship between KCI and PBL was not within "trade or commerce" within the meaning of § 11.

profession. "[A] fiduciary's silence is equivalent to a stranger's lie." *Energy Resources Corp.* v. *Porter*, 14 Mass. App. Ct. 296, 304 (1982) (Brown, J., concurring).

If the fact finder ultimately accepts Nova's view of the facts, then Kunian counseled and assisted his client, KCI, to act in a way that he knew or certainly should have known was fraudulent vis-à-vis PBL. In his December 28, 2000, letter, Kunian *expressly* represented to Saltiel (and PBL) that, in exchange for PBL's "continu[ing] representation" of KCI in an appeal before this court, KCI "will not transfer" its Hyde Park real estate "without putting an agreed upon amount in escrow pending resolution of the legal fees."

It cannot be gainsaid that an attorney in the discharge of his professional responsibilities may not permissibly mislead or intentionally make false statements, particularly knowing full well that third parties or opposing counsel will rely on such assertions — here, a promise — to their detriment. See *Kirkland Constr. Co.* v. *James*, 39 Mass. App. Ct. 559, 561-564 (1995). It is alleged that in reliance of Kunian's letter, PBL not only refrained from engaging in further collection efforts to obtain payment of its outstanding fees, but also agreed to act as counsel for KCI in the specific legal matter referenced by Kunian. See in this regard *Williams* v. *Ely*, 423 Mass. 467, 475 (1996). If proven, this conduct was deceitful, aided and abetted fraud, as well as unethical, see Mass.R.Prof.C. 1.2(d), 426 Mass. 1310 (1998); Mass.R.Prof.C. 4.1, 426 Mass. 1401 (1998), and in a realm well beyond protected attorney-client relations.

In short, Kunian's conduct could be viewed as part of a deliberate scheme by KCI to avoid paying PBL's fees. Likewise, this same conduct by Kunian could reasonably be determined to be violative of G. L. c. 93A. If the allegations against Kunian are proven, then he crossed the line, and he was not conflicted — this was merely bad behavior. See generally Jacobs & Laurence, Professional Malpractice § 16.9, at 343-344 & § 16.21, at 348 (2007). To paraphrase Justice Kaplan, attorneys "should take care to behave" themselves. See *Commonwealth* v. *Tirrell*, 382 Mass. 502, 513 (1981) (Kaplan, J., dissenting).