## Moses Baird *versus* Moses D. Wells *et al.*

By Revised Stat. *c.* 116, § 1, 2, 4, it is enacted, that any person may erect and main-
tain a water-mill, and a dam to raise water for working it, upon and across any
stream, &c. but that no such dam shall be erected to the injury of any mill lawfully
existing on the same stream, nor of any mill site on the same stream, on which a
mill or mill dam shall have been lawfully erected and used, unless the right to
maintain a mill on such last mentioned site, shall have been lost, &c. and that any
person whose land is overflowed or otherwise injured by such dam, may obtain com-
pensation therefor, upon his complaint, pursuant to the statute. The plaintiff, being
the owner of land bordering on a stream, began to erect a mill dam thereon, none
having existed there previously, and before it was finished the defendant began and
completed a mill dam below, whereby the plaintiff's mill privilege was destroyed.
It was *held*, that the erection of the dam by the defendant was lawful, and the
plaintiff could not maintain an action on the case for the injury, but that his reme-
dy was by complaint under the statute.

THIS was an action on the case.    The first count alleged, that the plaintiff had a mill site, and that on the 12th of December, 1836, he began to erect and did afterwards erect a mill on such site ; and that the defendants, on the 29th of April, 1837, erected a dam across the Farmington river and flowed back water upon the plaintiff's mill.    The second count alleged, that the defendants, by means of the same dam, flowed the plaintiff's meadow and injured his grass.

At the trial, before *Putnam* J., the plaintiff proved, that, on the 12th of December, 1836, he commenced framing mud-sills for an apron to his contemplated mill.    The trench for the mud-sills was excavated on the 12th and 13th, and the sills laid therein on the 13th.    Two posts were subsequently framed and placed into the mud-sills, and two pieces of timber

to go from the posts to the bank. The plaintiff's workman was prevented from proceeding in the work, by water set back by the defendants' dam, on the 29th of April, 1837. The water was kept up but one day at that time ; there was, however, evidence tending to show, that it was raised by the defendants at different times during the summer, to settle their dam, &c.

The plaintiff commenced framing his mill in March, 1837, and raised it about the 1st of April. He began to dig his race-way from the brook to his mill in September or October, 1837, and finished it about the 1st of December ; and in January, 1838, water was brought into such race-way and the wheel was turned round.

It further appeared, that in 1823 or 1824, a dam and saw mill were erected by Isaac Hunter on the site of the defendants' dam, whereby the plaintiff's meadow and the ground on which he subsequently erected his mill, were flowed ; that in 1830, on account of the damage done to the plaintiff and others, Isaac Hunter took down his mill and removed it to another water privilege below, and took out all that part of the dam, which was constructed of wood, leaving the stone work and spiling ; that he declared, however, that he had no intention of abandoning the privilege, and forbade his sons from removing the spiling. Isaac Hunter subsequently conveyed his farm to John Hunter, who, on the 17th of November, 1836, conveyed a parcel of the land, including this water privilege, described as such in the deed, to the defendants. On the 30th of the same month the defendants contracted for plank for a dam and flume, and for a frame for a furnace, to be delivered on the Hunter privilege by the 5th of April, 1837, and, on the same day, cleared off the site of the furnace, dug into the old log-way, laid monuments for the corners of the building, adopted the old dam as so much done towards their contemplated works, and cleared out the old race-way. They finished their dam on the 29th of April, 1837, raised the frame of the furnace during the month of May, and put it in blast on the 4th of October next ensuing.

There was evidence tending to show, that the dam of the defendants was eighteen or twenty inches higher than the old

Baird
v.
Wells.

Hunter dam; but the defendants' witnesses stated, that, if there was any difference in the height of the dam, it was trifling.

The defendants proved, that the plaintiff had declared, that his object in erecting a mill, was to prevent the defendants from flowing his meadow.

The defendants contended, that the plaintiff could not recover on the second count, but should be confined to his remedy by complaint under the statute ; that he could not recover on the first count, because the Hunters did not abandon their privilege, and the defendants, possessing their rights, had a right to raise the dam and keep it up through the year, being liable only to damages, to be assessed on complaint under the statute ; but that if the Hunters did abandon their privilege, the defendants still had the priority over the plaintiff, his acts in December, 1836, not amounting to an appropriation of the water, and, therefore, not constituting a beginning to occupy the privilege.

The plaintiff contended, that the facts proved, constituted in law an abandonment of the old Hunter dam, and a prior occupation on his part, of his mill privilege ; that if the Hunter dam was abandoned, he had a right to the enjoyment of his mill privilege, because he occupied his mill site before the water was flowed back upon it by the defendants ; and that if the Hunter dam was not abandoned, he had such right subject only to the user and height of the Hunter dam.

The judge instructed the jury, that if they believed that the Hunter dam was not abandoned, the plaintiff's only remedy was under the mill acts.

The jury returned a verdict for the defendants.

All questions of law arising upon the report, were reserved for the consideration of the whole Court ; and judgment was to be rendered on the verdict, or a new trial granted, as the Court should order.

Sept. 19th.

*Bishop* and *Tucker*, for the plaintiff, cited *Bigelow* v. *Newell*, 10 Pick. 348.

*Byington* and *Porter*, for the defendants.

May term
1840.

WILDE J. delivered the opinion of the Court. The plaintiff demands damages for an injury done to his real estate, by

Baird
*v.*
Wells.

the erection of a dam across Farmington river by the defendants, whereby the plaintiff's meadow lands were flowed, and water was set back on the wheel of his mill. By the first section of the Revised Stat. c. 116, the defendants were authorized to flow the plaintiff's land, and are only liable to the payment of damages in the manner provided by the statute. And this claim the plaintiff has waived. But he contends, that he may well maintain his action for damages to his mill.

Several grounds of defence were relied on at the trial, only one of which is presented for our consideration ; and this arises on an exception taken to the instruction of the court to the jury. By the facts reported it appears, that the plaintiff commenced preparations for erecting his mill in December, 1836, and then laid down two sills for an apron to his contemplated mill, but before he had erected and completed his mill, the defendants had completed their dam and mill below, whereby the plaintiff's workmen were interrupted and prevented from proceeding with the plaintiff's work. There was a question as to the priority of the commencing these operations, and also as to the defendants' prior right under the title of one Isaac Hunter, who erected a mill on the defendants' mill-site, in 1823 ; but these questions are not material. The jury were instructed, on the whole evidence, that if they believed that the Hunter dam was not abandoned, the plaintiff's only remedy was under the mill acts. The correctness of the principle laid down depends on the construction of the 2d section of the same statute. That provides, that " no such dam shall be erected, to the injury of any mill lawfully existing, either above or below it, on the same stream, nor to the injury of any mill site on the same stream, on which a mill or mill dam shall have been lawfully erected and used, unless the right to maintain a mill, on such last mentioned site, shall have been lost or defeated, by abandonment or otherwise."

The question is, whether the present case is brought within this prohibitory clause of the statute. And it is the opinion of the Court that it is not. At the time defendants' dam was erected the plaintiff had no existing mill. The defendants' dam was erected in April, 1837 ; and the plaintiff's mill was not completed until the December after. The plaintiff's

race-way from the brook to his mill for the purpose of procur-
ing a head of water, was not begun until September or Octo-
ber, of the same year. Nor was the plaintiff's mill-site one on
which a mill or mill-dam had ever before been erected and used.
So that the case is not within the true meaning and indeed the
express words of the statute. If the plaintiff has any remedy,
it is under the mill acts, as the jury were instructed.

The case of *Bigelow* v. *Newell*, 10 Pick. 348, was cited in
support of the plaintiff's claim ; but as that case was decided
before the Revised Statutes, it cannot control the obvious
meaning of the 2d section of the statute.

*Judgment on the verdict.*