Roach, Christine M., J.
Introduction
This case arises out of a collection action. The following facts, viewed in the light most favorable to Plaintiff ZVI Construction Company, LLC (ZVI), may be gleaned from the Amended Complaint and appropriate materials either attached or duly referenced.
ZVI performed build out and renovation work in or about 2005 for the former Upper Crust pizza group of restaurants. Upper Crust failed to pay ZVI for the work, and ZVI sued and obtained an injunction preventing Upper Crust and its principals from transferring funds other than in the ordinary course. Suffolk Civil Actidn 12-1369-D (collection action). Upper Crust and Defendants here Huggard and Higgins retained Attorney Franklin Levy (Levy) and his law firm Lawson & Weitzen, LLP (Lawson or the law firm) to represent them in the collection action.
The collection action was mediated on September 6, 2012. Prior to beginning the mediation that day, the parties to the collection action executed a Mediation Agreement which provided that “the mediation . . . including all communications between and among the parties and their counsel, shall be confidential and shall not be used for any purposes other than for said mediation.” The mediation resulted in a Settlement Agreement also dated September 6, 2012. ZVI claims Upper Crust and its principals breached the Settlement Agreement, by diverting the funds promised to ZVI,[1] and instead using those funds to pay the principals, pay fees to the Defendant law firm, and hire bankruptcy counsel to file a petition for bankruptcy on behalf of Upper Crust.
The unusual wrinkle in this story is that ZVI claims: 1) Defendant Levy personally made certain misrepresentations to ZVI and its counsel during the course of the mediation (but outside the presence of the mediator), about how the funds would be disbursed, which induced ZVI to enter into the Settlement Agreement; and 2) Levy and the law firm thereafter assisted their clients in diverting the promised funds, by the manner in which they handled the funds, and by representations or omissions in their communications with ZVTs counsel or other counsel between September 6, 2012 and October 4,2012 (the date of the bankruptcy filing), thereby “delaying ZVI from enforcing its rights under the Settlement Agreement to allow the Upper Crust to file for bankruptcy.” Opposition [to current Motions], at pages 1-2.
Based on these allegations, the Amended Complaint contains the following counts against Levy and Lawson: tortious interference with contractual relations (Count III); aiding and abetting fraud (CountV); negligent or intentional misrepresentation (Count VI); breach of escrow agreement (Count VII); breach of fiduciary duty (Count VIII); conversion (Count IX); conspiracy (Count X); and violation of G.L.c. 93A (Count XII). Levy and Lawson have moved to strike all of the factual allegations of the complaint which refer to the alleged misrepresentation made during the mediation (Docket, at Paper 25), and to dismiss all eight of the counts pleaded against them (Docket, at Paper 24).[2] Following hearing May 16, 2013, and review of the entire file, the Motion to Strike is ALLOWED, and the Motion to Dismiss is ALLOWED in part and DENIED in part
*421 Discussion Motion to Strike
Levy and Lawson’s Motion to Strike pursuant to Mass.R.Civ. 12(f) is based on what they argue is the privileged nature of any statements allegedly made by Levy or other agents of Upper Crust during the mediation process. Levy and Lawson rely primarily on two bases for their position: the Mediation Agreement between the parties; and the statutory confidentiality provided by G.L.c. 233, section 23C. They point out that the Mediation Agreement bars the use of any communication for any purpose, and does not contain limiting or conditional language. It is thus broader than the statutory provision, which shields “[a]ny communication made in the course of and relating to any mediation and which is made in the presence of such mediator by any participant, mediator, or other person” (emphasis supplied).
This distinction is of more than passing interest because of the pleadings in this case. The original complaint, filed January 28, 2013, was verified, and did not identify whether the alleged representation by Levy with respect to handling the settlement funds was made within or without the presence of the mediator. Complaint, at para. 12. The Amended Complaint, which is not verified, adds the sentence, at para. 14, “Levy’s representation occurred outside the presence of the mediator.” Id.
ZVI’s response is that 1) the litigation privilege does not apply because a mediation is not a judicial proceeding; 2) the statement at issue (and the statutory confidentiality) is subject to the crime/fraud exception; and 3) the Mediation Agreement should not be considered by the court, but if it is, the Agreement should not be read more broadly than the statutory protection. Vigorous as these arguments may be, they cannot carry the day for ZVI on this record.
I agree with ZVI that the broad litigation privilege does not apply to the alleged mediation statement, because it did not occur in a judicial proceeding. When parties engage in voluntary (as distinguished from court-ordered) mediation, they are affirmatively removing themselves from the judicial process. And I also agree that privilege and confidentiality are not the same as a matter of law.[3]
But if the privilege did apply, I would not be inclined to rule that this is a circumstance worthy of the crime/fraud exception. Focusing precisely on the day of the mediation and the alleged statement, nothing in the Amended Complaint plausibly pleads that at the time that privileged statement was made, it was “made for the purpose of getting advice for the commission of a fraud or crime.” Purcell v. District Attorney for the Suffolk District, 424 Mass. 109, 112 (1997) (internal quotations omitted). Nor is there a plausible allegation that crime or fraud was continuing or contemplated, by either Levy or his client. Rather, what is pleaded is that all parties were aware of Upper Crust’s precarious financial circumstances, and that its principals were juggling multiple creditors and claims. It is not fraud to do so, nor is it necessarily fraud to state that one “would pay” the creditor with whom one is currently dealing. The Amended Complaint contains nothing but conclusoiy allegations with respect to Levy’s (or his clients’) subjective intent being anything other than that as expressed on September 6, 2012.
Moreover, I cannot accept Plaintiffs argument that the Mediation Agreement is not fairly considered or enforceable. The Amended Complaint fully references the mediation and the Settlement Agreement, and thus puts the mediation process at issue. ZVI cannot ask the court to consider all of the circumstances of that day for purposes of assessing its pleadings, but then simultaneously ask the court to ignore one of the written agreements indisputably entered into by the parties on that same day, on the same subject matter. These are sophisticated business parties who were represented by counsel, making an agreement which on its face is unambiguous. They were free to bargain for more confidentiality than the statute provides, and it is not for the court now to strike a different bargain for them. The Mediation Agreement precludes the use of the alleged Levy statement for any purpose; reference to or reliance upon that statement for purposes of ZVI’s claims must therefore be stricken from the Amended Complaint.
Motion to Dismiss Misrepresentation (Count VI)
The stricken mediation statement is not the only factual basis pleaded for intentional or negligent misrepresentation by Levy and Lawson. ZVI claims Levy’s message to Tobins’ counsel that Levy would “send my firm’s escrow wire info,” was misleading, because the account contemplated and used was in fact the Lawson IOLTA, not a separate escrow. Amended Complaint, at para. 20. ZVI also intimates that, at some point between September 24, 2012 and October 4, 2012, Levy wrongfully omitted telling ZVI that Upper Crust was consulting a bankruptcy attorney. Id. at para. 21. Similarly, ZVI intimates that Levy wrongfully omitted telling ZVI, during the period September 28, 2012 through October 3, 2012 (when counsel for ZVI repeatedly requested confirmation that payment would be made to it), that Lawson was disbursing funds to others. Id., at paras. 27-34. Within its pleading of Count VI, ZVI also contends that these Defendants possessed an affirmative duty to disclose that the Upper Crust, Huggard and Higgins did not intend to pay the funds to ZVI, but rather intended to file for bankruptcy for Upper Crust. Id. at para. 71.
With respect to the alleged misrepresentations or omissions post-mediation, Defendants make two basic arguments: 1) there was no duty to disclose; and 2) there was no detrimental reliance. The duly argument raises the question of when, if ever, an attorney may be bound to provide an adversary with truthful *422 information about his client’s plans (for example, that a bankruptcy filing is contemplated). It also begs the distinction between a “personal” representation by counsel, and counsel’s being “a conduit” for information from a client. ZVI is relying primarily on Nova Assignments, Inc. v. Kunian, 77 Mass.App.Ct. 34 (2010), and Kirkland Construction Co. v. James, 39 Mass.App.Ct. 559 (1995), to support the viability of this count of its complaint.
Resolution of this issue requires precise focus on the allegations about exactly what Levy said or didn’t say to ZVI post-mediation. ZVI alleges Levy emailed Tobin’s counsel that he would “send [ ] my firm’s wire info.” Amended Complaint, at para. 18. Levy “failed to respond” to a request by ZVTs counsel dated October 1, 2012 to disburse the funds in accordance with the mediation Settlement Agreement, id., at para. 29; failed to respond to a “second demand” dated October 2, 2012, id. at para. 30; and again on October 3, 2012 “failed to confirm that he or Lawson would make payment.” Id. at para. 34. Finally, when informed by counsel for ZVI on the morning of October 3, 2012 that ZVI intended to file an emergency application for preliminary injunction, Levy responded mid-day that such action would be a “premature injunction,” based on the Settlement Agreement’s language, calling for payment “on or before October 3, 2012.” Id. at para. 35. By this point in time the allegation (on information is belief) is that the funds had already been disbursed to others, and that bankruptcy counsel had already advised that the mediation Settlement Agreement “doesn’t make any sense” for Upper Crust, and that Upper Crust should “defer payment on this because this doesn’t work.” Id. at paras. 21-22; 25.
This focus demonstrates that the alleged post-mediation representations or omissions fall into the traditional realm of privileges (both attorney-client and litigation), not the exception for personal statements or actions of counsel. I agree with the reasoning in Loltek-Jick v. O’Toole, 2011 WL 7110492 (Mass.Super.Ct. Dec. 15, 2011) (Kaplan J.) [29 Mass. L. Rptr. 269], that these two lines of doctrine solidly coexist, and that, as ever, the analysis must be fact-specific. First, nothing in the Amended Complaint or the properly referenced material plausibly supports a meeting of the minds on an escrow agreement, and a promise to send a “firm’s wire info” cannot reasonably be read otherwise. In contrast, the same material does support a reasonable inference that Levy was receiving ongoing confidential instructions from his clients in the critical period September 17 through October 3, 2012.
None of the allegations about statements or omissions by Levy to others during this post-mediation period rise to the level of false statements or actions made or taken by Levy personally, as distinct from professional advocacy (including delay), at the request of or for the benefit of his clients. Massachusetts courts will not infer a duty to disclose information to nonclients when to do so would conflict with the duty of loyalty to a client. Lomare v. Basbanes, 418 Mass. 274, 276 (1994); Logothetl v. Gordon, 414 Mass. 308, 312 (1993); Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 524-25 (1983); Nova, 77 Mass.App.Ct. at 37-38 (distinguishing statements and circumstances); Lucas v. Newton Wellesley Hospital, 2001 WL 834618, at *4 (Mass.Super. July 20, 2001) (Brassard, J.) (no duty to disclose existence of insurance policy or to supplement interrogatories). After all, the collection action had not yet been dismissed, and was still pending against Upper Crust. For these reasons, the Motion to Dismiss Count TV must be ALLOWED, for failure to plead actionable misrepresentation, and I need not reach the reliance element of the claim
Breach of Escrow Agreement and Breach of Fiduciary Duty (Counts VII and VIII)
The Amended Complaint alleges that, in connection with the Levy mediation statement ZVI and Tobins, who was the source of the funds (not Upper Crust), were “intending Levy and Lawson to hold the funds in escrow.” Amended Complaint, at para. 75. As indicated above, there is no plausible factual allegation that the Defendants here agreed to create and maintain a separate escrow account, or undertook a duty in this regard to ZVI. The written mediation Settlement Agreement did not contain any such provisions. Amended Complaint, at Exhibit C. And as with any other contract allegation, ZVTs subjective, unilateral intent, without more, does not a binding agreement make. Mercurius Inv. Holding Ltd. v. Aranta, 247 F.3d 328, 331-32 (1st Cir. 2001) (applying Massachusetts law) (no escrow agreement where one side considered law firm bound to hold funds, but “those expectations appear to have been merely unilateral”).
I have carefully considered the authority offered by ZVI with respect to entrustment of funds to an attorney, and the fact that a writing is not necessarily required to create an escrow duly. I have also considered that self-dealing by an escrow agent (for example, collecting one’s own debt from escrowed funds) could be a breach of fiduciary duty if one existed. Zang v. NRTNew England Incorporated, 77 Mass.App.Ct. 665, 671 n.3. But “(i]t is the intention of the parties at the time of the deposit . . . [that] is controlling.” In the Matter of Hilson, 448 Mass. 603, 614 (2007). The Amended Complaint alleges no meeting of the minds between the parties on the terms of an escrow agreement for which Levy or Lawson was to be agent, and no other basis for a fiduciary duty owed by Levy and Lawson to ZVI. It is undisputed Levy’s clients and ZVI had conflicting interests. Absent express agreement between ZVI and Upper Crust, the pass-through of funds contemplated by the Settlement Agreement could not create fiduciary duties. Mercurius, Inc., 247 F.3d at 331-32. Counts VII and VIII must therefore be dismissed for failure to state a claim
*423 Tortious Interference with Contractual Relations (Count III)
Our standard for pleading and proving a claim of intentional interference is well established. The four elements are: 1) an advantageous business relationship; 2) knowing inducement by the defendant to break that relationship; 3) in addition to being intentional, the interference must be improper in motive or means; and 4) proximate harm to the plaintiff. Curtis v. Herb Chambers 1-95, Inc., 458 Mass. 674, 681 (2011); G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 273 (1991); Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B., 62 Mass.App.Ct. 34 (2004); Melo-Tone Vending, Inc. v. Sherry, Inc., 39 Mass. 315, 319-20 (1995). The tort requires acts, beyond the fact of intentional inducement itself, which constitute improper motive or means. United Truck Leasing Corp. v. Getman, 406 Mass. 811, 816 (1990); National Economic Research Assoc., Inc. v. Evans, Legg Corp., 2008 WL 4352600 (Mass.Super. 2008) (Gants, J.) [24 Mass. L. Rptr. 436]. And, Massachusetts looks to the considerations set out in Restatement (Second) of Torts Section 767 (1979)[4] to determine whether the act(s) complained of involve improper motive or means. G.S. Enterprises, 410 Mass, at 273.
ZVTs allegation is that Levy and Lawson knew of the Settlement Agreement, but nonetheless transferred to other recipients (including themselves) the money slated to perform that agreement. Amended Complaint, at paras. 51-52. The “improper motive or means” is stated in conclusoiy fashion. There is no allegation of Levy’s or Lawson’s “inducement” of Upper Crust to breach the agreement. The most that reasonably may be inferred is that, armed with bankruptcy counsel's advice, Upper Crust decided to follow that advice. To the extent litigation counsel was involved in Upper Crust’s pursuit of bankruptcy counsel’s advice, they cannot be held civilly liable to third parties for zealously representing their clients’ interests.
The potential exception to this analysis is the self-dealing, te. the allegation that Levy and Lawson solicited or accepted payment of their own fees from the settlement monies. To the extent the allegations may reasonably be read to infer that Levy and Lawson were motivated in part to undertake this series of actions by the ability to receive for themselves fees which were owed by Upper Crust—but perhaps not otherwise collectable—the Amended Complaint states a claim separate and distinct from torts based in privileged communication. The existence of fees, and the satisfaction or not of those fees, is not a privileged matter. That said, in the ordinary commercial context, the “legitimate advancement of one’s own economic interest” cannot constitute an improper motive or means. Pembroke, 62 Mass.App.Ct. at 39, citing Hunneman Real Estate Corp. v. The Norwood Realty, Inc., 54 Mass.App.Ct. 416, 427-29; G.S. Enterprises, 410 Mass, at 273.
The key word, of course, is “legitimate.” The advancement of one’s own economic interest must be legitimate, and the target agreement or relationship must be one with which the party seeking judgment in its favor has not wrongfully “interfered.” As a matter of fact on these pleadings, these Defendants were involved in the decision to “defer” performance of the Settlement Agreement. The issue is whether the manner of this interference was tortious or not. Whether it was legitimate for Levy and Lawson to advance or to satisfy their own interests in the disputed timeframe and under the circumstances alleged here is, at least in part, a dispute of fact about which the record is incomplete. A court cannot fairly rule on this question as a matter of law at this stage of the proceeding. Defendants’ Motion is DENIED on Count III.
Aiding and Abetting Fraud, and Conspiracy (Counts V and X)
ZVI does not dispute that an aiding and abetting claim, as with conspiracy, requires first stating a viable claim for the underlying tort by a third party, in this case Upper Crust or its principals Huggard and Higgins. The alleged fraud is the apparent decision by the client(s), post-mediation, to apply the Tobins funds differently than promised by the terms of the Settlement Agreement with ZVI. Amended Complaint, at para. 62. Once again, however, the relationship between acts or decisions by the client Defendants, and acts by the counsel Defendants themselves, all occurring within the context of the ongoing collection litigation, is key.
Joint liability of counsel for fraudulent actions of the clients would require substantial assistance or encouragement, coupled with the independently unlawful intent of counsel. Kurker v. Hill, 44 Mass.App.Ct. 184, 188 (1998) (one form of civil conspiracy derives from concerted action whereby liability is imposed on one individual for the tort of another; key elements are substantial assistance with knowledge of a tortious plan); Payton v. Abbott Labs, 512 F.Sup. 1031, 1036 (D.Mass. 1981) (applying Massachusetts law). Assuming as I must that Levy and Lawson were under no dufy to disclose their clients’ confidential business plans or financial status, it is impossible even by granting all favorable inference to ZVI to construe the legal advice and representation alleged to have been provided by counsel to be wrongful encouragement and unlawful intent to further fraud by the clients. Again, one must distinguish between privileged advice of counsel and independent client decision making, on the one hand, and a wrongful combination or conspiracy outside that lawful relationship, on the other. Counts V and Xfail to state claims against Levy and Lawson, and must be dismissed.
Conversion (Count IX)
There is no dispute that the tort of conversion consists of a wrongful exercise of dominion or control *424 over the personal property of another." Cahaly v. Benistar Property Exchange Trust Co., Inc., 68 Mass.App.Ct. 668, 679 (2007). ZVI alleges Levy and Lawson converted its property (the settlement funds) because after accepting the funds into the IOLTA account, they did not disburse those funds to ZVI according to the terms of the Settlement Agreement, but instead disbursed them elsewhere, including to the law firm. Amended Complaint, at para. 85. Levy and Lawson argue no claim for conversion may be stated against them because they were not parties to the Settlement Agreement. Defendants’ argument on this count is not entirely persuasive.
First, the allegation that the $250,000 received by Upper Crust from a settlement with Tobins became property of ZVI by virtue of the Settlement Agreement states a viable claim. Grand Pac. Fin. Corp. v. Brauer, 57 Mass.App.Ct. 407, 412-13 (2003). Second, there is no dispute Lawson held those funds in its IOLTA client account for a time. And third, there is the allegation that Lawson (among others) was paid from those funds, and ZVI was not. The foundational tenet of an IOLTA fund is that the monies contained there are property of—and subject to control by—the clients, not the lawyers. Thus, I fail to see how an allegation can be viable that these Defendants exercised dominion or control over the entire amount of the Tobins funds wired to Upper Crust. By the same token, however, I fail to see how whatever portion of those funds the law firm received in fees (presumably by direct transfer from the IOLTA account to a law firm account) cannot be the basis for stating a conversion claim. Accordingly, and to this limited extent, the Motion to Dismiss Count IX is DENIED.
G.L.c. 93A (Count XII)
This count presents the question of when (if ever) actions by counsel during the conduct of litigation may be deemed to be activity of a parly within trade or commerce for purposes of G.L.c. 93A section 11 jurisdiction. Morrison v. Toys “R" Us, 441 Mass. 451, 457-58 and n.4 (2004) (holding that litigation is not conduct in trade or commerce, and thus misconduct of litigation does not fall within the ambit of the statute); Linkage Corp. v. Trustees of Boston Unto., 425 Mass. 1, 22-24 (1997). Again, a specific focus is required. The question is not whether the clients were engaged in trade or commerce, but rather whether the work and actions of the lawyers themselves served to “inject” those lawyers into trade or commerce for purposes of the statute. First Enterprises, Ltd. v. Cooper, 425 Mass. 344 (1997); Nova, 77 Mass.App.Ct. 44, n.7; Kirkland Const., 39 Mass.App.Ct. at 564. Ordinary litigation work (including engaging in settlement discussions) will not do so. The lawyer’s activity must “ ‘cross a boundary’ ‘from traditional representation into active participation in trade or commerce.’ ” Chesweü, Inc. v. Premier Homes and Land Corp., 319 F.Sup.2d 144, 152 (D.Mass. 2004); see also, Boston Prop. Exch. Transfer Co. v. Iantosca, 686 F.Sup.2d 138, 145 (D.Mass. 2010) (relationship as former adversary in litigation insufficient as matter of law).
ZVI does not specifically allege what about Levy and Lawson’s acts here would bring them within the statute, aside from the alleged misrepresentations of Levy, and the aiding and abetting of clients, which I have already dismissed. The only other component the court has been able to identify from the pleadings is the alleged manner by which Defendants collected their fee. Substantively, Defendants are likewise correct that “a lawyer may not be liable to his client’s adversary under G.L.c. 93A sections 2 and 11, for acts performed on the client’s behalf.” First Enterprises, 425 Mass, at 347-48; Nova, 77 Mass.App.Ct. at 44, n.7. Thus the only potentially unfair act remaining is that which Levy and Lawson performed on their own behalf—collecting their fee from the proceeds identified as ZVI settlement funds. For the same limited reason that Counts III and IX survive on this question, Defendants’ Motion to Dismiss Count XII must also be DENIED,[5]
Conclusion
For the reasons stated, the court rules as follows:
Defendants Levy’s arid Lawson and Weitzen LLP’s Motion to Strike is ALLOWED;
Defendants Levy’s and Lawson and Weitzen LLP’s Motion to Dismiss is ALLOWED with respect to Counts V, VI, VII, VIII and X, and DENIED with respect to Counts III, IX, and XII.

Parties to confer and prepare supplementation, as appropriate, of their Joint Statement dated May 16, 2013, in advance of hearing before Judge Sanders scheduled for July 23, 2013; that hearing to include Rule 16 Conference.

*iii ‘The Massachusetts Lazo Reporter Hi 31 Mass. L. Rftr. No. 18 (October 21, 2013) Employment Law Workers’ Compensation Insurance Coverage for Leased Employees - A Superior Court Opinion Holds that the Existence of an “Alternate Employer Endorsement” in a Temporary Staffing Company’s Workers Compensation Insurance Policy Makes the Exclusive Remedy Provision of the Act Available to the Insured’s Customers. The existence of an “alternate employer endorsement” in a temporary staffing company’s workers’ compensation insurance policy that extends coverage for its employees while on loan to a customer is sufficient to make the exclusive remedy provision of the Workers’ Compensation Act available to relieve its customers of common-law liability for injuries to loaned employees. The opinion recites that each employee has signed an agreement with the leasing company that waives any rights to compensation benefits from the company’s customers, but the holding is based solely on the existence of the “alternate employer endorsement” clause in the policy and not on any agreement between the temporary workers and the insured, between the temporary workers and the customers, or between the insured and its customers. Molina v. State Garden, Inc. (Gordon, Robert B., J.) .412 Law of Lawyering Attorney’s Liability to an Insolvent Client’s Creditors - A Superior Court Opinion Holds that an Attorney Is Not Liable for Negotiating a Settlement with an Insolvent Client’s Creditor Without Disclosing the Client’s Intent to File for Bankruptcy. An attorney is not liable for failing to disclose during negotiations with a client’s creditor the fact that the client was preparing for a bankruptcy filing and therefore a proposed settlement was unlikely to be enforceable, both because such a claim is barred by the litigation privilege (which grants an attorney absolute immunity for claims based on statements made in the course of a litigation proceeding) and because a duty to make such a disclosure would be inconsistent with the attorney’s duties to the client. ZVI Construction Co. v. Levy (Roach, Christine M., J.). The opinion also holds, however, that allegations that an attorney paid itself a fee from a settlement fund held in an IOLTA account that was recovered from a third party on behalf of an insolvent client, with knowledge that the fund had been allocated by the client to comply with another settlement agreement negotiated by the firm with a creditor of the same client, are sufficient to state claims by the creditor against the attorney for conversion and a violation of Chapter 93A. The opinion further holds: (1) The litigation privilege, which makes statements by counsel in the course of litigation proceedings absolutely privileged, does not apply to voluntary (i.e., non-court-ordered) mediation proceedings, even mediation proceedings occurring while a civil action involving the same matter is pending, because such mediations occur outside of the judicial process. (2) A provision of a mediation agreement barring the use of “any communications made in the course of and relating to any mediation, and which is made in the presence of the mediator,” bars a party’s use of such communications to support a subsequent claim against the other party’s counsel for allegedly making misrepresentations for the purpose of deceiving the plaintiff into entering into a settlement which was unlikely to be performed because of the client’s undisclosed intent to file for bankruptcy .419 Workers’ Compensation Workers’ Compensation Insurance Coverage for Leased Employees - A Superior Court Opinion Holds that the Existence of an “Alternate Employer Endorsement” in a Temporary Staffing Company’s Workers Compensation Insurance Policy Makes the Exclusive Remedy Provision of the Act Available to the Insured’s Customers. See the discussion above under “Employment Law” of Molina v. State Garden, Inc. (Gordon, Robert B., J.) 412
*iv iv ‘The, Massachusetts Law Reporter 31 Mass. L. Rptr. No. 18 (October 21, 2013) TABLE OF CASES FOR THIS ISSUE Augustine, Commonwealth v.415 Boston Herald, Scholz v.407 Commonwealth v. Augustine .415 Commonwealth v. Halbert.409 Commonwealth v. Power .405 Halbert, Commonwealth v.409 Levy, ZVI Construction Co. v.419 Molina v. State Garden, Inc.412 Power, Commonwealth v.405 Scholz v. Boston Herald .407 State Garden, Inc., Molina v.412 ZVI Construction Co. v. Levy.419 TABLE OF MASSACHUSETTS STATUTES AND RULES OF PROCEDURE FOR THIS ISSUE M.G.L.c. 93A.419 Mass.R-Civ.P. §54(d)(e) .407 M.G.L.c. 127, §133A.409 INDEX FOR THIS ISSUE Arbitration, Mediation, Mise. Cases Attorneys Litigation Privilege Does Not Apply to Voluntary Mediation Proceedings, 419 Clause of a Mediation Agreement Barring the Use of Any Communications Made During Mediation Bars a Participant’s Action Against an Opponent’s Attorney for Misrepresentations Allegedly Made During the Mediation, 419 Attorneys Liabilities, Mise. Cases Allegations that Immediately Prior to a Client’s Bankruptcy Filing an Attorney Paid Itself a Fee from a Settlement Fund Held in Its IOLTA Account that Had Been Earmarked by the Client for a Settlement with a Creditor Are Sufficient to State Claims by the Creditor Against the Firm for Conversion and a Chapter 93A Violation, 419 Attorney Is Not Liable for Negotiating a Settlement with a Client’s Creditor Without Disclosing the Client’s Intent to File for Bankruptcy, 419 Litigation Privilege, In General, Attorneys Litigation Privilege Does Not Apply to Voluntary Mediation Proceedings, 419 Bankruptcy, Commencement of Bankruptcy Case, Mise. Cases, Attorney Is Not Liable for Negotiating a Settlement with a Client’s Creditor Without Disclosing the Client’s Intent to File for Bankruptcy, 419 Constitutional Law, Cruel and Unusual Punishment, Sentencing of Juveniles, U.S. Supreme Court’s 2012 Ruling that Lifetime Sentences for Juveniles Entered Pursuant to Sentencing Schemes that Mandate the Loss of Any Possibility for Parole Are Unconstitutional, Applies Retroactively to Convictions that Were Final When Miller was Released, 409 Costs, Prevailing Party, Deposition Expenses Court’s Discretionary Authority to Award Deposition Costs Includes an Award for Depositions Noticed by the Prevailing as well as by the Losing Party, 407 Opinion Awards Substantial Deposition Expenses to a Newspaper for Successfully Defending a Defamation Action Brought by a Public Figure, Relying on the Public Policy Concern that the Risk of Litigation Costs Might Cause Newspapers to Engage in Undesirable Self-censorship When Publishing Articles About Public Figures, 407 Rule Authorizing a Discretionary Award of Deposition Expenses to a Prevailing Party Is Not Limited to Depositions that Yield Evidence That Was Actually Used to Support the Winning Theory, 407 Criminal Law and Procedure, Punishment, Parole Opinion Denies a Parolee’s Application for a Permit to Travel to a Foreign Country, 405 Superior Court Has Jurisdiction to Authorize Permits to Allow Parolees to Travel Outside the Commonwealth, 405 Master and Servant, Leased Employees, Mise. Cases, Existence of an “Alternate Employer Endorsement” in a Temporary Staffing Company’s Workers Compensation Insurance Policy Makes the Exclusive Remedy Provision of the Act Available to the Insured’s Customers, 412 Search and Seizure, Without a Warrant, Cell Phone Records Receipt of a Court Order Under the Federal Stored Communications Act Does Not Dispense with the Need in Massachusetts to Obtain a Search Warrant to Access Information to Determine a Suspect’s Location at a Particular Time, 415 Search Warrant Is Required for Access to Cell Phone Records to Determine a Suspect’s Location at the Time a Crime Was Committed, 415 Workers’ Compensation Exclusive Remedy Provision, Existence of an “Alternate Employer Endorsement” in a Temporary Staffing Company’s Workers Compensation Insurance Policy Makes the Exclusive Remedy Provision of the Act Available to the Insured’s Customers, 412 Insurance Coverage, Mise. Cases, Existence of an “Alternate Employer Endorsement" in a Temporary Staffing Company’s Workers Compensation Insurance Policy Makes the Exclusive Remedy Provision of the Act Available to the Insured’s Customers, 412 Submit Opinions for Publication Help us save good law from being buried in closed case files. Send us the memoranda of decisions from Superior Court proceedings in which you are involved. We welcome all submissions. Mail to Massachusetts Law Reporter, P.O. 575, Guilford, CT 06437, or fax to 617-423-0203 or 203-458-3637, or email to editor@lawreporter.com.
*0 HARVARDLAW SCHOOL LIBRARY i Harvard Law School Library j Langdell Hall 1545 Massachusetts Avenue Cambridge, MA 02138 ATTN; Library Key issues m this week’s Massachusetts Law Reporter: Criminal Law and Procedure For another opinion discussing the impact of the recent disclosures of improper test results reported by a particular chemist at a drug testing facility used by law enforcement, See Commonwealth v. Ayala (Sanders, Janet L., J.) (Superior Court) .1 Criminal Law and Procedure A noncitizen suspected of “alimentary smuggling” may not be detained by immigration authorities for observation and inducement of a bowel movement for more than 48 hours without judicial authorization. See Commonwealth v. Perez (Sanders, Janet L., J.) (Superior Court) .i Criminal Law and Procedure The use of cell phone records obtained without a warrant to trace a 911 emergency call does not constitute an unconstitutional search. See Commonwealth v. Willis (Sanders, Janet L., J.) (Superior Court) .ii Criminal Law and Procedure A defendant has no reasonable expectation of privacy in cell phone company “call detail reports” which record the chain of cell towers used to complete a cell phone call and reveal only a suspect’s general geographic location at the time of a call. See Commonwealth v. Collins (Brassard, Raymond J., J.) (Superior Court).n Health Law A hospital is strictly liable under Chapter 93A for an employee’s violation of the HIV Privacy Statute by improperly disclosing a patient’s positive HIV test result, regardless of fault by either the employee or the hospital. See Bryant v. Jackson (Leibensperger, Edward R, J.) (Superior Court).ü Core Opinions Tailored to your Practice 2448 .M37 November 4, 2013 Volume 31, No. 19 Published Weekly by the Massachusetts Law Book Company KFM Ü a ii! o SEA" az» zz. er
November 4, 2013 Volume 31, No. 19 Reporting Developments in Massachusetts Law and the Full Text of Superior Court Decisions Highlights of the Opinions Reported in This Issue An index, table of cases and table of statutes for the cases reported this week are presented at the back of this issue. Cumulative indexes and tables for the current volume are presented bimonthly. The latest cumulative indexes and tables for this volume are at the back of Issue No. 16. Cumulative indexes and tables for all opinions reported in Volumes 1 through 30 are at the back of each of those volumes, Issues No. 32. Criminal Law and Procedure New Trial Based on the Discovery of New Evidence - A Superior Court Opinion Considers the Impact of the Recent Disclosures of Improper Test Results Reported over an Extended Period of Time by a Particular Chemist at a Drug Testing Facility Used by Law Enforcement to Identify Seized Substances. The opinion in Commonwealth v. Ayala (Sanders, Janet L., J.) involves another motion to vacate a guilty plea entered in a drug case in which the prosecution and the defense relied on evidence from the Department of Health laboratoiy that employed the chemist that was recently found to have mishandled a large number of drug tests over an extended period of time. The opinion concludes that a hearing must be held to determine whether the particular chemist had conducted the tests upon which the defendant’s decision to plead guilty was based, whether the defendant would have pled not guilty even if the misconduct by the chemist had been known, and whether the chemist was an agent of the prosecution. While the opinion only rules that a hearing is required, it is worth reading for the court’s discussion of the type of evidence that must be considered at the hearing on the motion to vacate.429 Warrantless Detention for Suspected “Alimentary Smuggling” - A Superior Court Opinion Holds that a Noncitizen Suspected of “Alimentary Smuggling” May Not Be Detained by the Immigration Service for Observation and Inducement of a Bowel Movement for More than 48 Hours Without Judicial Authorization. Although there is a more relaxed standard for the detention by the Immigration Service of a noncitizen for suspicion of smuggling, an entrant suspected of being engaged in “alimentary smuggling,” i.e., smuggling ingested packages of illegal drugs, may not be held for observation while being given medication to induce bowel movements for a period longer than 48 hours, unless authorization for continued detention is obtained from a magistrate. This opinion suppresses evidence obtained from a suspect detained without any judicial oversight or opportunity for legal representation for over three days while being administered medication to induce a bowel movement, where there was no objective evidence that the suspect was engaged in a criminal activity. Commonwealth v. Perez (Sanders, Janet L., J.) .432 NOTICE No issue of the Massachusetts Law Reporter was published last week, because an insufficient number of Superior Court opinions were available to us. We welcome submissions of opinions. Fax to 617-423-0203, email to editor@lawreporter.com, or mail to Law Reporter, P.O. Box 575, Guilford, CT 06437.
*ii ii ‘The. Massachusetts Law Reporter 31 Mass. L. Rptr. No. 19 (November 4, 2013) Criminal Law and Procedure (continued) Warrantless Seizures of Cell Phone Records - A Superior Court Opinion Holds that the Use of Cell Phone Records Obtained Without a Warrant to Trace a 911 Emergency Call Does Not Constitute an Unconstitutional Search. There is no reasonable expectation of privacy in calls placed to a 911 emergency line. Therefore the use of cell phone call records obtained without a warrant to determine a suspect’s location when the call was made is not unconstitutional, even with respect to Cell Phone Site Location Information (CSLI) which can be used to determine a callers’ exact location and are normally provided greater protection than other, less invasive information available from cell phone call records. This opinion holds that the use of cell phone records obtained without a warrant to investigate the defendant’s use of a 911 call to falsely report a stolen vehicle, for the purpose of misleading the police into believing that the caller’s vehicle was at another location at the time a crime was committed, is not unconstitutional. Commonwealth v. Willis (Sanders, Janet L., J.).436 Warrantless Seizures of Cell Phone Records - A Superior Court Opinion Holds that a Defendant Has No Reasonable Expectation of Privacy in “Call Detail Reports” Which Record the Chain of Cell Towers Used to Complete a Call and Reveal Only the General Geographic Area from Which a Call Originates or Terminates. There is no reasonable expectation of privacy in “call detail reports,” i.e., cell phone business records that list the sequence of cell phone towers used to transmit each cell phone call, which can be used to locate the initial cell phone tower contacted and which indicates only the broad geographic area from which a call was placed. Therefore obtaining a criminal defendant’s cell phone CDR records without a warrant, to establish that the defendant was within the Washington D.C. area for an extended period of time immediately after a crime had occurred in Boston, raising the implication that the defendant had fled from Boston, does not violate the constitutional prohibition of warrantless searches. The opinion draws a distinction between Cell Phone Site Location Information (CSLI) reports, which can be triangulated to establish a cell phone’s specific location during use and therefore to track an individual’s movements, and CDRs, which cannot be used to pinpoint a defendant’s location at a particular time. The opinion notes that there is currently a substantial debate over the admissibility of CSLI reports obtained without a search warrant, while it is generally accepted that CDRs obtained without a warrant are admissible. Commonwealth v. Collins (Brassard, Raymond J., J.) .437 Health Law Hospital Liability for the Release of Confidential Patient Information - A Superior Court Opinion Holds that a Hospital Cannot Be Vicariously Liable Under the Common Law for an Employee’s Intentional Disclosure to a Third Party of a Patient’s Confidential Medical Information, because such conduct would not be in furtherance of the employer’s interests. This opinion holds that the defendant hospital may not be vicariously liable for a hospital employee’s intentional disclosure to a third party that a mutual friend who was a patient of the hospital was infected ’with the HTV virus. Bryant v. Jackson (Leibensperger, Edward R, J.). The opinion also holds, however, that pursuant to the HIV Privacy Act, M.G.L.c. Ill, §70F, a medical facility is strictly liable for any improper disclosure of a patient’s HIV test results regardless of fault, and such a violation of the Act constitutes a per se violation of M.G.L.c. 93A This opinion holds that the defendant hospital is liable under Chapter 93A for an employee’s improper release of such information, regardless of whether either the employee or the hospital was at fault.425 The Massachusetts Law Reporter (USPS 013-178) is published weekly, except the weeks of Thanksgiving and Christmas, by the Massachusetts Law Book Company, Inc., P.O. Box 575, 39 Chaffinch Island Road, Guilford, CT 06437. Phone (617) 423-0203 or (203) 458-3637. The subscription price is $319 per year. Second-class postage paid at Guilford, CT. POSTMASTER: Send address changes to Massachusetts Law Book Co., P.O. Box 575, Guilford, CT 06437. 4 1Ü 1

Nhe source of funds for the initial payment to ZVI was to be yet another settlement agreement entered into by Upper Crust with another of its principals, Jordan Tobin.

Nile docket in this case is already replete with motion practice. The court has ruled on four motions (Papers 6, 7, 10, and 16), has four under advisement (Papers 24, 25, 26 and 31), and two more are scheduled to be heard in July (Papers 32 and 34).

Nhat said, I note our authoritative Massachusetts Guide to Evidence treats the statutory language as articulating a “privilege,” with no express exceptions other than the “at issue” waiver. Mass.G.Evid., section 514, Note (2013). And I cannot read the statutory language to support ZVTs assertion that it is “silent as to the protection for participants.” Opposition, at page 16.

(a) Nature of actor’s conduct; (b) actor’s motive; (c) interests interfered with; (d) interests advanced; (e) social interests in protecting each side; (f) proximity of conduct to interference; and (g) relations between parties.

I decline to address the parties’ respective damages arguments at this stage of the proceeding.